## Commonwealth ex rel. Goldsmith, Appellant, v. Myers.

Argued April 29, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*David N. Savitt,* for appellant.

*Michael M. Baylson,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION PER CURIAM, July 1, 1968:

In December, 1958, after jury trial, Walter Goldsmith was found guilty of murder in the first degree, with the penalty fixed at life imprisonment. Motions for new trial and in arrest of judgment were filed but later withdrawn. No appeal was taken.

On May 10, 1965, Goldsmith filed a petition for writ of habeas corpus. The court took extensive testimony on the petition and, after hearing and thorough consideration, dismissed the petition. The petitioner has appealed.

Goldsmith argues his constitutional rights were invaded when certain statements were introduced at the trial, these statements, he averred, having been coerced from him by the police. A review of the evidence which covers some 200 pages fails to substantiate the petitioner's contentions. It is quite clear from the testimony that the confessions made by the petitioner were wholly voluntary and not coerced by any force, threats of force, or by any other means.

We affirm what the court below said in its thorough and well-reasoned decision, which concludes with the statement that: "Finally, having carefully observed the witnesses and weighing their testimony, we accept the testimony of the police officers and reject the conflicting testimony of the relator. We find no basis in the record for holding that the relator's will was overborne and his capacity for self-determination critically impaired . . ."

The court's conclusion in our opinion was the only reasonable one to be drawn from the evidence.

Following the original trial the court stenographer, who had covered the trial, died when only 309 pages of the testimony had been transcribed. Efforts to have other stenographers transcribe the notes of the deceased reporter proved unsuccessful. The petitioner now advances this situation as a reason for a new trial. He does not point to any specific prejudice or harm resulting to him from his not having the entire transcript of testimony, but contents himself with the argument that "the memory of those who testified in this proceeding have been dulled by the passage of years." However, there was available to him the testimony taken at the trial of three co-defendants. There were also available transcripts of preliminary hearings, original police reports, and the recollection of persons present at the appellant's trial, which could have been used for impeaching testimony of adverse witnesses. He chose not to draw from this material.

Since the defendant withdrew his motions for new trial and in arrest of judgment originally filed by him, and waited ten years before taking any action with regard to alleged deprivation of rights, he may not now use mere passage of time as an asserted basis of prejudice against him.

Order affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

In arriving at what I agree to be a correct result, the majority has, unfortunately, failed to demonstrate a sensitivity to certain issues very much present in this case. I therefore take this opportunity to express my views on them.

Appellant's involuntary confession argument is based on the introduction at trial of two written statements. I concur in the majority's evaluation of the habeas testimony insofar as the court concludes that both of these statements were voluntary; however, as to the second confession, there exists a problem neither raised, nor resolved by the majority opinion. The first of appellant's confessions was taken late in the evening before his preliminary hearing. At this preliminary hearing appellant was represented by private counsel, who, upon learning of appellant's first statement, told Goldsmith, in open court and in the presence of the police, not to give any more information to the detectives unless he (the lawyer) was present. Nevertheless, only a few hours after this hearing, Detective Gilton did take the second confession from appellant without informing the lawyer and without informing Goldsmith of his right to summon counsel. We are thus presented with a situation analagous to the one discussed in my dissenting opinion in *Commonwealth v. Dickerson*, 428 Pa. 564, 565, 237 A. 2d 229, 230 (1968).

In *Dickerson*, appellant was also interrogated twice by the police, once before and once after his preliminary hearing. I expressed the view that after appellant had been placed in the custody of the prison authorities, any post-hearing questioning ipso facto took place during a "critical stage" in the proceedings, thus

requiring the presence of counsel unless knowingly and intelligently waived. See *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963). Of course, this right to counsel is retroactive. *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963). As I stated in *Dickerson:* "Post-preliminary hearing interrogation in the absence of counsel contravenes the basic dictates of fairness in the conduct of criminal litigation to the same extent as post-indictment interrogation. The essential inquiry is whether Dickerson had progressed sufficiently far into the criminal process that counsel became mandatory; certainly, if the preliminary hearing itself can be sufficiently far, post-preliminary hearing questioning must be as well. The police, having completed their investigation, should be disentitled from further contact with the prisoner unless this contact is effectuated by legal process—and legal process, a fortiori, would here require counsel." 428 Pa. at 570, 237 A. 2d at 233. Dickerson has now obtained relief in the federal courts. See *United States ex rel. Dickerson v. Rundle,* Misc. No. 3783 (E.D. Pa. 1968).

Since it is uncontradicted that appellant in the present case gave his second written confession during a post-hearing interrogation without counsel, I would conclude that he is entitled to a new trial but for the fact that I believe counsel had been waived. Counsel for Goldsmith testified that, in the clearest of language, he told appellant not to give any additional information to the police unless his attorney was present. Nevertheless Goldsmith went on to sign a second confession. Moreover, the testimony of Detective Gilton, which was believed by the habeas court, indicated that appellant's second confession was wholly voluntary. I would thus conclude that even under the strict waiver standards of *Gideon,* the evidence here shows that such a waiver did exist. Goldsmith obviously knew that he *had* counsel, that counsel was *available* for the second

interrogation, and that counsel had *warned* him against making any further statements. He nevertheless chose to ignore this advice; and while I certainly do not commend the police for their failure to suggest to appellant that he summon his attorney, neither do I feel that this failure vitiates an otherwise clear waiver.

On the second issue in this case, the failure of appellant to secure a complete transcript of his trial, I again agree with the majority's ultimate conclusion, but wish to point out that this conclusion is not inconsistent with my dissenting opinion in *Commonwealth v. Banks,* 428 Pa. 571, 237 A. 2d 339 (1968). Although I took the position in *Banks* that the particular prisoner there involved was entitled to either release or a new trial when, through no fault of his own, he could not obtain a trial transcript, I find the present case distinguishable on two grounds.

Underlying the *Banks* rationale was the notion, gleaned from dicta in *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366 (1963), that an indigent defendant who had been unconstitutionally deprived of appellate counsel under *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963) and subsequently given the right to appeal nunc pro tunc, must not then be denied the right to prosecute this appeal adequately simply because he had never secured a transcript of his own trial. As I said in *Banks* of this "Indian giving" by the Commonwealth: "Under the Constitution, this Court may not with one breath tell an indigent defendant that because of his indigency he was denied assistance of counsel for purposes of appeal and in the same breath insist that it will deprive him of the very means necessary to effectuate his unconstitutionally denied right, i.e., a trial transcript." 428 Pa. at 575, 237 A. 2d at 341. However, it can be quickly seen that in the present case, Goldsmith was *not* indigent and was *not* lacking appellate counsel. Therefore, this appeal dovetails better

with *Norvell* itself than it does with *Banks*, for in *Norvell* the Supreme Court said: "[W]here transcripts are no longer available, . . . [Pennsylvania] may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal." 373 U.S. at 424, 83 S. Ct. at 1369.

The fact that Goldsmith had private appellate counsel, however, is not enough, by itself, to defeat this particular lost transcript claim; for appellant now contends (and this contention is uncontradicted) that his trial counsel tried vigorously to secure a complete transcript, but was unsuccessful. We therefore cannot rest on *Norvell's* presumption of waiver, for that presumption is obviously bottomed on counsel's *tactical* choice not to secure a transcript rather than on his inability to secure one through fault of the state.* I therefore believe that *Banks* must be distinguished on a second ground.

*Banks'* pressing need for a transcript was amply demonstrated by footnote 6 of my dissent which recites that "none of the surviving parties involved in Banks' trial have any recollection sufficient for an adequate reconstruction" of the trial. I think it obvious, however, that if an appellate court or a habeas court *could* reconstruct a trial with enough specificity to evaluate all of a prisoner's claims adequately, then no harm can be said to have befallen such accused from the failure to secure a complete trial record. In the present case, not only *can* the trial be reconstructed sufficiently to

---

* In the present case the Commonwealth admits that the court stenographer (now deceased) failed to transcribe the notes of testimony although requested by counsel to do so. (Record at 8a.) This action contravenes a specific statute requiring the stenographer in any first degree murder case "to make, certify, and file of record a typewritten copy of the stenographic notes of trial, without any order of the court; . . ." Act of May 1, 1907, P. L. 135, §7, 17 P.S. §1809.

pass upon Goldsmith's only contention (the voluntariness of his confessions), but in fact this was done by the court below. Moreover, appellant in his brief admits that no *Jackson v. Denno* hearing is here necessary because "the record in the instant proceeding under the Post Conviction Hearing Act of 1965 is adequate for this Court to determine that the statements purportedly made by defendant were involuntary."

This admission that *Jackson* relief is not needed, albeit styled by an advocate, is nonetheless candid enough to underscore my own belief that appellant's 200 page habeas hearing, containing lengthy testimony of the police who took the confession as well as Goldsmith's preliminary hearing counsel, is more than adequate for us to pass on his voluntariness claim. I realize that the memories of these witnesses may have been dulled somewhat by the passage of ten years, but this fogginess in recollection seems to have hurt or helped neither side more than the other; and, on the crucial issues, the testimony appears more than sharp enough for adequate evaluation.

I therefore agree with the majority that this appellant is not entitled to relief.