## Commonwealth *v.* Norman, Appellant.

Argued November 11, 1971.  Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Francis S. Wright,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Louis A. Perez, Jr.,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 25, 1972:

On May 18, 1949, appellant, Charles Norman, was tried before a judge and jury on sixteen separate bills of indictment, eight charging aggravated assault, and eight charging carrying a concealed weapon in connection with eight separate armed robberies. Appellant pleaded guilty to two of the indictments, and a jury found him guilty of all of the rest. At the insistence of the trial judge, post-trial motions were argued immediately after the verdicts were rendered. The motions were denied and appellant was sentenced to consecutive sentences adding up to either 50 to 100 years

or 80 to 160 years, depending on whether one chooses to believe the record which indicates that sentences were only pronounced on five of the bills, or chooses to examine each of the eight bills upon which is contained a 10 to 20 year sentence to be served consecutively with the others. Both counsel and the lower court have assumed that the sentences were "limited," as pronounced, to five consecutive 10 to 20 year sentences. In view of our disposition of this case, we need not settle the discrepancy between the sentences as pronounced and the sentences as indicated on the separate indictments.

On May 29, 1967, appellant filed a petition for relief under the Post Conviction Hearing Act, alleging a denial of his *Douglas* rights. On November 2, 1967, appellant was permitted to file motions for a new trial nunc pro tunc. These motions were denied and the Superior Court affirmed. *Commonwealth v. Norman,* 217 Pa. Superior Ct. 840, 270 A. 2d 265 (1970). We granted allocatur and now we reverse.

We do so because of the denial of due process occasioned when, despite appellant's counsel's specific request that a stenographer be appointed and the notes of testimony be transcribed, the court stenographer failed to transcribe the trial court's charge to the jury. As we noted in *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971), there is almost universal accord that if "a transcript per se is not an absolute due process necessity, there must at least be an equivalent 'picture' of what transpired below." See also *Commonwealth v. DeSimone,* 447 Pa. 380, 290 A. 2d 93 (1972).

The Commonwealth relies on *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366 (1963), a case in which the trial transcript was unavailable because of the death of the reporter, where the Supreme Court held: ". . . [W]here transcripts are no longer available, Illinois

may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal." At page 424.

According to the Commonwealth's argument, since there had been no objection to the charge to the jury, the stenographer's failure to transcribe the charge which he had recorded was probably, in the words of the post-conviction hearing judge, "for good reason." Presumably, according to the Commonwealth, appellant's retained attorney simply believed that transcription of the proceedings was unnecessary when there were no objections to the charge.

However, we do not believe that the Commonwealth has any right to rely on a presumption that appellant's lawyer protected appellant's rights on appeal. For one thing, the finding that appellant's *Douglas* rights were violated means that his attorney did not effectively protect his appellate rights. Moreover, one of the principal arguments appellant raises on appeal is that he was denied the effective assistance of counsel. As evidence of this alleged ineffectiveness, appellant emphasizes: (1) that his counsel acquiesced in the consolidation for trial of charges connected with eight separate robberies without making a motion for severance to prevent the facts of the separate robberies from becoming indistinguishable; (2) that the jury was permitted to hear appellant's guilty plea to one of the robberies, including an eyewitness description of the holdup that was quite similar to the testimony of a preceding witness describing a different robbery, without objection or a request for instructions as to the effect the plea of guilty to the one robbery should have on their deliberations concerning the other robberies; (3) that counsel acquiesced in permitting the testimony of three police officers, all of whom were only connected with the crime to which appellant pleaded guilty; and (4) that appellant's counsel made no move to sequester the witnesses to the

different robberies to prevent them from being affected by each other's testimony.

While all of these facts may not necessarily render the assistance of appellant's counsel ineffective as a matter of law, they do indicate that the Commonwealth has no right to rely on a presumption that appellant's counsel's failure to object meant that the court's charge adequately protected appellant from possible unfairness as a result of the consolidation.

Without a transcript of the charge, there is no way to insure appellate review of the competency of appellant's counsel in failing to object to it.

It must also be noted that the trial court was not free from fault in the court reporter's failure to transcribe the charge. At the conclusion of trial, appellant's counsel sought to file a motion for a new trial. The following colloquy took place: "MR. CLARKE: I would like to have an opportunity to file a motion for a new trial. THE COURT: Argue it now. MR. CLARKE: I am not prepared to argue it now. THE COURT: There is no basis for a new trial. There are no exceptions to the charge. MR. CLARKE: I don't think I can do justice to the defendant in arguing it now. I would like to look at the notes and consider it myself. THE COURT: In my judgment there is no necessity of that kind and the ends of justice does (sic) not require it. In the exercise of my judgment I will overrule the motion. Anything to say before sentence is passed? MR. CLARKE: The defendant is a young man 23 years of age and this is the first time he has been involved in any trouble before. THE COURT: He is in trouble now."

Since counsel had requested that the entire proceedings be transcribed, he may very well have assumed that the charge was included in the transcription. The court itself, by its undue haste, prevented counsel from discovering to the contrary.

Judgment of sentence reversed. New trial granted.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

With due respect to the majority's position, I do not find a denial of due process occasioned by the inability to transcribe the trial judge's charge to the jury. This case fits well within the ambit of *Norvell v. Illinois*, 373 U.S. 420, 83 S. Ct. 1366 (1963), and the decision of this Court in *Com. v. Banks*, 428 Pa. 571, 237 A. 2d 339 (1968) (per curiam). In both decisions, the trial proceedings were stenographically reported but were not transcribed. In the present situation, only the charge was not transcribed. As in *Norvell* and *Banks*, no appeal was initiated until long after the initial trial (in the present matter, eighteen years have elapsed). During the intervening period the stenographer has died, resulting in the inability to transcribe his recorded notes. As the Supreme Court stated in *Norvell*: "For, where transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal." 373 U.S. at 424. The majority contends the above statement is inapplicable to appellant's situation since, although appellant was represented at trial by retained counsel, the PCHA judge's determination that a *Douglas* violation had occurred rebuts the presumption that appellant's retained counsel protected his appellate rights. Although a post-conviction hearing was conducted resulting in the finding of a *Douglas* violation, the basis for this determination was not articulated. Therefore, it is just as plausible, indeed more so in light of the current practice in PCHA proceedings, that leave to file post-trial motions *nunc pro tunc* resulted from the absence of any statement on the

record that appellant had been notified of his right to appeal and the assistance of free counsel to perfect an appeal. The failure to so advise appellant is not surprising in light of the fact that appellant's trial antedated *Douglas* by fourteen years. There has been no showing that appellant's trial counsel refused to represent him on appeal or that petitioner's indigency prevented him from retaining another. *Norvell v. Illinois,* 373 U.S. at 422. Thus, in my opinion, the presumption enunciated in *Norvell* that appellant's counsel protected his appellate rights remains intact.

The majority opines that appellant's allegations of constitutionally ineffective counsel further erase any presumption that appellant's counsel protected his appellate rights. Without attempting to indulge in a debate over what weight the presumption carries, suffice it to say that this Court has adopted stringent requirements which must be satisfied before the representation of counsel is deemed ineffective. *See, Com. ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967). In my opinion, the majority should decide the ineffective counsel allegation before affording it any semblance of merit.

I dissent.

Mr. Justice POMEROY joins in this dissent.