Commonwealth *v.* Goldsmith, Appellant.

Argued April 20, 1972. Before JONES, C. J. EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*David N. Savitt,* with him *Walsh and Savitt,* for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, May 4, 1973:

Walter Goldsmith, appellant, was convicted of murder in the first degree and sentenced to life imprison-

ment in December, 1958. No appeal was taken. In 1965, appellant filed pro se a petition for a writ of habeas corpus. Original trial counsel was appointed by the court to represent the appellant. An order denying relief was affirmed on appeal. *Commonwealth ex rel. Goldsmith v. Myers*, 430 Pa. 385, 243 A. 2d 429 (1968). In 1970, appellant filed pro se a PCHA petition, claiming for the first time that he had not knowingly and voluntarily waived his appeal rights following his conviction in 1958. The public defender was appointed by the court to represent the appellant. The PCHA hearing resulted in a finding that the appellant had not knowingly and voluntarily waived his right of appeal and, thus, appellant was permitted to file post-trial motions. These motions were filed by the public defender. Later, appellant's original trial counsel was substituted for the public defender and argued the post-trial motions. Relief was denied and appellant, represented by original trial counsel, is now before us on direct appeal from his judgment of sentence.

Appellant raises one issue. He contends that he is entitled to a new trial since he cannot effectively and meaningfully exercise his direct appeal rights because he has not been furnished a full transcript or other equivalent picture of what transpired during his trial. We agree.

Under the Act of May 1, 1907, P. L. 135, §7, 17 P.S. 1809, following a conviction of murder in the first degree, it is ". . . the duty of the official stenographer forthwith to make, certify, and file of record a typewritten copy of the stenographic notes of trial, without any order of court. . . ." In this case trial counsel made repeated requests but never received a full transcript. It is not disputed that substantial and pertinent portions of the notes of testimony were never transcribed because the stenographer became ill and

later died. Other stenographers unsuccessfully attempted to transcribe the notes of the deceased stenographer.

Recently, in *Commonwealth v. DeSimone,* 447 Pa. 380, 384-85, 290 A. 2d 93, 96 (1972), this Court said: "Simple logic and justice require that once a defendant is guaranteed a right of appeal . . . he must be provided with a 'transcript or other equivalent "picture" of what transpired below' in order to have a 'meaningful appeal.' It is just as constitutionally impermissible to deny a defendant a record necessary for appellate review as it is to deny him the assistance of counsel necessary to prosecute the appeal."

As in *DeSimone,* the appellant in this case cannot meaningfully exercise his appeal rights without a full transcript or other equivalent picture.

In *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971), a new trial was granted because no transcript or other equivalent picture of what transpired in the trial court was available for appellate review even though trial counsel failed to request a stenographic recording of the trial. The same circumstances were present in *DeSimone.* In this case, the trial was stenographically recorded but a full transcript was never filed, as legally required. The difference is not material. A meaningful appellate review is impossible absent a full transcript or an equivalent picture of the trial proceedings. If a meaningful appellate review is impossible, for whatever reason, and *the appellant is not at fault,* he is entitled to a new trial. As we said in both *Anderson* and *DeSimone,* fairness compels the grant of a new trial.

Appellant's failure to claim a denial of his appeal rights in his 1965 habeas corpus petition did not constitute a waiver and appellant was entitled to raise the issue in his 1970 PCHA petition. The waiver concept, introduced into our law by the Post Conviction

Hearing Act, Act of January 25, 1966, P. L. 1580. §1 et seq. 19 P.S. 1180-1 et seq., can bar a claim, raised in a petition under the Act, only if an appellant knowingly and understandingly failed to raise the claim in a proceeding filed after the effective date of the Act, March 1, 1966, *Commonwealth v. Melton*, 449 Pa. 223, 296 A. 2d 727 (1972); *Commonwealth v. Butler*, 442 Pa. 476, 276 A. 2d 536 (1971); *Commonwealth v. Cannon*, 442 Pa. 339, 275 A. 2d 293 (1971).

The appellant has not previously had a ruling on whether he is entitled to a new trial because the lack of a transcript or equivalent picture of his trial proceedings deprives him of an effective direct appeal to which he is entitled. Indeed, in appellant's previous appeal, this Court assumed—and appellant did not contend otherwise—that the appellant had knowingly and voluntarily waived his rights to a direct appeal. For this reason the missing transcript did not entitle the appellant to any relief in his habeas corpus proceeding. If the appellant had waived his appeal rights in 1958, which we assumed in his first appeal, the missing transcript years later would be immaterial. An appellant who waives his appeal rights after trial cannot request relief years later in a collateral attack on the basis that he cannot obtain a transcript. That is why, in appellant's first appeal, we said, "[s]ince the [appellant] withdrew his motions for a new trial and in arrest of judgment originally filed by him, and waited ten years before taking any action with regard to alleged deprivation of rights, he may not now use mere passage of time as an asserted basis of prejudice against him." *Commonwealth ex rel. Goldsmith v. Myers*, 430 Pa. at 387, 243 A. 2d at 430-431.

Thus, in the 1965 habeas corpus proceeding this Court considered the effect of a missing transcript only to the extent that the missing transcript had a bearing on the claims raised by the appellant in his habeas

corpus petition. In that petition, the only claim raised was whether appellant's confession was voluntary. There was no claim at that time, as there is now, that the missing transcript affected appellant's rights on a direct appeal.

Thus, in appellant's first appeal we noted that the appellant, ". . . does not point to any specific prejudice or harm resulting to him from his not having the entire transcript of testimony. . . ." *Commonwealth ex rel. Goldsmith v. Myers*, 430 Pa. at 387, 243 A. 2d at 430. In the habeas corpus proceeding appellant pointed to no specific harm and had not raised the claim that he was entitled to a direct appeal. We properly denied relief.

Now appellant, who has since raised a claim that was not waived in 1965, (his right to a direct appeal which has been granted) does point to "specific prejudice or harm" resulting from not having the entire transcript of testimony; namely, that meaningful appellate review is impossible without a complete transcript. We have so held in *Anderson* and *DeSimone*.

The Commonwealth also argues that this case is distinguishable because appellant was not provided trial counsel as an indigent but rather had private counsel. The indigency of the appellant is irrelevant. Neither indigency nor the lack of indigency can deprive an appellant of his rights. Both must knowingly and voluntarily waive appeal rights. It has already been determined—and no contrary argument is before us—that this appellant was not at fault in failing to appeal in 1958. He is now exercising that right and is entitled to a meaningful appeal which is impossible without a full transcript or its equivalent.

The Commonwealth also contends that the lack of a transcript or its equivalent for the purpose of exercising appeal rights should not entitle the appellant to a new trial because he is represented by the same

counsel on this appeal that he had at the original trial. Apparently, the Commonwealth's theory is that the presence of trial counsel for appeal purposes is an adequate substitute for a full transcript or an equivalent picture. That theory, however, presupposes that an equivalent picture has been captured and retained by a photographic memory with which all trial counsel are endowed. It is true that new counsel on appeal must of necessity have a blank memory as far as trial proceedings are concerned. It does not follow, however, that trial counsel has a perfect memory. Without a transcript or equivalent picture, trial counsel can be just as severely handicapped as new counsel on appeal. Often, the significance of occurrences during the course of a trial cannot be perceived without the availability of a complete transcript. Even issues that may be recalled without the help of a transcript frequently cannot be properly assessed by trial counsel or a court without a transcript. Additionally, under the doctrine which permits appellate review of constitutional or fundamental error, even if there has been no objection during the trial, it is impossible, without a transcript, to present a full and meaningful appeal.

A rule which granted a new trial if someone other than trial counsel were arguing the appeal but denied a new trial if original trial counsel were arguing the same appeal would readily be nullified just as soon as the rule were announced. Such a ruling would only warn appellants to obtain new attorneys for appeal purposes and if the nonindigent could obtain new counsel, the indigent could insist, under a claim of invidious discrimination and denial of equal protection of the laws, that they too are entitled to new counsel for appeal purposes. See *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963).

The responsibility of defense counsel at the trial and during the trial is that of an advocate on behalf

of his client's cause. It is the responsibility of the state—not defense counsel—to see to it that a transcript or equivalent picture is available so that appellant may effecively pursue his appeal rights to which he is entitled. The Commonwealth misconceives the possible significance of the availability of trial counsel. The Commonwealth may attempt to reconstruct an equivalent picture and in so doing utilize whatever witnesses may be available, including trial counsel. The responsibility, however, for reconstruction is the Commonwealth's. See *Anderson, supra* and *DeSimone, supra*. In this case, the Commonwealth has not provided a full transcript or an equivalent picture.

Trial counsel has stated, without contradiction, that various trial objections occurred and there were several motions for withdrawal of a juror. It is not unusual that trial counsel's memory is not more perfect since twelve years elapsed before appellant was granted his direct appeal rights. Appellant had been deprived of his rights twelve years earlier *through no fault of his own*. In fact, it was appellant, and not any attorney, who raised the deprivation of his appeal rights in a pro se petition.

Since the Commonwealth has not provided a full transcript or other equivalent picture of what transpired during the trial, appellant cannot effectively and meaningfully pursue his guaranteed right of appeal and is entitled to a new trial.

Judgment of sentence reversed and a new trial ordered.

Mr. Justice NIX concurs in the result.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the majority opinion for the reasons stated therein as well as for those reasons stated in my dissenting opinion in *Commonwealth v. Banks*, 428 Pa.

571, 237 A. 2d 339 (joined by EAGEN, J.), cert. denied, 393 U.S. 895, 89 S. Ct. 156 (1968).

In joining, I note that this case is not in conflict with *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366 (1963), and reliance upon that holding here would be misplaced. "All that Norvell held was that a state, without violating the due process or equal protection clauses, may refuse to give a prisoner a new trial when no transcript of the trial is available *if the prisoner knowingly and intelligently waived his Douglas rights of appeal.* For when a defendant has knowingly and intelligently waived his right of appeal, whether a transcript of his trial is available is irrelevant, for he has waived his right to assert any claims which he could have raised on direct appeal." *Commonwealth v. DeSimone,* 447 Pa. 380, 385, 290 A. 2d 93, 96 (1972) (emphasis added) (footnotes omitted).[1]

Here, the Post Conviction Hearing Act court affirmatively found that appellant had been denied his appellate rights as guaranteed by *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963). Thus, it has already been adjudicated (and is not now challenged) that appellant, unlike Norvell, *has been denied the assistance of counsel on appeal.* This, then, is the "different case" not governed by *Norvell.* "If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's

---

[1] "More prescisely, the question is whether when a transcript cannot subsequently be obtained or reconstructed *through no fault of the State,* may it constitutionally draw the line against indigents who had lawyers at their trial but after conviction *did not pursue their remedy? . . .* And so we have the narrow question—whether a State may avoid the obligation of Griffin v. Illinois, *where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time." Norvell v. Illinois,* 373 U.S. 420, 422, 83 S. Ct. 1366, 1368 (1963) (footnote omitted) (emphasis added).

indigency prevented him from retaining another, we would have a different case. Cf. Douglas v. California, . . ." *Norvell* at 422-23, 83 S. Ct. at 1368 (emphasis added). Here, such a *Douglas* denial did result. Thus, the presumption relied upon in *Norvell*, ". . . *that he who had a lawyer at the trial had one who could protect his rights on appeal*,"[2] is not applicable here. See *Banks*, supra (dissenting opinion). "The grant of Douglas relief indicates that [appellant] was deprived of assistance of counsel for appeal; this is the identical deprivation which prevented [appellant] from taking any action to compel the stenographer to transcribe his notes. Under the Constitution, this Court may not with one breath tell an indigent defendant that because of his indigency he was denied assistance of counsel for purposes of appeal and in the same breath insist that it will deprive him of the very means necessary to effectuate his unconstitutionally denied right, i.e., a trial transcript." *Banks*, supra at 575, 237 A. 2d at 341 (dissenting opinion).

Moreover, *Norvell* mandates the result our Court has reached for the additional reason that the unavailability of appellant's trial transcript is due to the *fault of the Commonwealth*.[3] Our statute, unlike the Illinois statute involved in *Norvell*, makes it mandatory that the notes of testimony in a murder conviction be immediately transcribed *"without any order of the court."* "If the fault must be assessed against a party in this litigation, then the Commonwealth must bear the blame. The Act of May 1, 1907, P. L. 135, §7, 17 P.S. §1809, in language which is unmistakable, makes it mandatory for the court stenographer in a capital case to transcribe and file the notes of testimony: '[I]n any case . . . of conviction of murder in the first degree, it *shall be the duty* of the official stenographer forth-

---

[2] 373 U.S. at 424, 83 S. Ct. at 1369.

[3] See note 1, supra.

with to make, certify, and file of record a typewritten copy of the stenographic notes of trial, *without any order of the court; . . .'* (Emphasis supplied. ) Furthermore, it cannot be said that appellant himself should have taken steps to insure that the stenographer performed his statutory duty." *Banks,* supra at 573, 237 A. 2d at 340 (dissenting opinion).

Even a cursory reading of *Norvell* makes it abundantly clear that the absence of fault on the part of the state was a controlling factor in the Court's opinion. That factor, however, in view of our statute (noted above), is absent here.

In light of *DeSimone,* supra, which requires the retroactive application of *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971) (requiring a transcript or "equivalent picture" of trial), this Court has reached the result required by our prior case law.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The Court today concludes that the appellant, Walter Goldsmith, must be granted a new trial because the Commonwealth cannot provide him with either a transcript or an equivalent picture of his 1958 trial. For reasons set forth at length in the dissenting opinion of Mr. Chief Justice JONES (joined by this writer), in *Commonwealth v. DeSimone,* 447 Pa. 380, 290 A. 2d 93 (1972), I disagree with the retroactive application of the transcript requirements first enunciated by this Court in *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971), and therefore am obliged to dissent.

My disagreement with the majority, however, does not end on this point. As correctly noted in the Court's opinion, appellant has not been deprived of a transcript through any fault of the Commonwealth. Rather, the untimely illness of the court reporter immediately following trial, his subsequent death, and the inability of any other reporter to read his shorthand notes com-

bined to limit the transcription to only 309 pages of testimony from the five-day trial. The Supreme Court of the United States, faced with a similar situation arising in an Illinois trial, i.e. unavailability of the trial transcript due to the death of the court reporter, held that Due Process and Equal Protection did not require the state to afford the defendant a new trial. *Norvell v. Illinois,* 373 U.S. 420, 10 L. Ed. 2d 456 (1963). That case, in my view, is controlling here. Said the Supreme Court: "When through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter some practical accommodation must be made. . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations— illogical, it may be, and unscientific. . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned.' The 'rough accommodations' made by government do not violate the Equal Protection Clause of the Fourteenth Amendment unless the lines drawn are 'hostile or invidious.' " *Id.* at 424; 10 L. Ed. 2d at 459.

The rough accommodation permitted in *Norvell* to relieve the state of its transcript obligation was a presumption that the defendant who had a lawyer at trial and presumably for purposes of appeal, and yet failed to pursue an appeal for some fifteen years, had his rights adequately protected. Admittedly, the same presumption does not attach here. The Post Conviction Hearing court held that appellant had been denied his appellate rights because of fear of the imposition of the death penalty after retrial. See *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969). To conclude now that his appellate rights were adequately protected by counsel[1] would be both

---

[1] The present appellant, Walter Goldsmith, has enjoyed the services of the same *privately retained* attorney for the past fifteen

inconsistent and unjust. Cf. *Commonwealth v. Norman,* 447 Pa. 515, 291 A. 2d 112 (1972); *Commonwealth v. Banks,* 428 Pa. 571, 237 A. 2d 339 (1968) (dissenting opinion by Mr. Justice ROBERTS).[2] The unavailability of one form of rough accommodation, however, should not foreclose resort to others. In the present case, appellant can support his need for a transcript with only the baldest assertion that he recollects numerous trial errors, particularly in the court's charge, none of which he specifies. It is not unwarranted to assume that such errors are alleged only because a transcript of that portion of the trial cannot be reproduced. In an analagous situation, the Supreme Court of the United States held that where a defendant's grounds for error make out a *colorable need* for a complete transcript, the burden is on the state to show that something less will suffice. *Mayer v. Chicago, supra* at 195, 30 L. Ed. 2d at 378-9. To require in the instant case, where part of the transcript is unavailable through no fault of the state, the showing of a *colorable need* for the missing portion seems to me to be the type of "rough accommodation" sanctioned by *Norvell.* While avoiding the automatic release of those with spurious challenges, it affords those with meritorious claims the opportunity to vindicate their rights.

---

years—at trial, in the 1965 habeas corpus proceedings, and on this appeal. Significantly, the transcript cases, both federal and state, have all sought to insure that "[*d*]*estitute defendants* . . . be afforded as adequate appellate review as defendants who have money enough to buy transcripts." (Emphasis added). *Griffin v. Illinois,* 351 U.S. 12, 19, 100 L. Ed. 891 (1956). See also, *Mayer v. Chicago,* 404 U.S. 189, 30 L. Ed. 2d 372 (1971); *Norvell, supra; Draper v. Washington,* 372 U.S. 487, 9 L. Ed. 2d 899 (1963); *Pate v. Holman,* 341 F. 2d 764 (5th Cir. 1965); *Commonwealth v. DeSimone,* supra; *Commonwealth v. Anderson, supra.* Cf. *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811 (1963). Quaere whether denying a transcript to the nonindigent appellant in this case involves any of the "hostile and invidious" discriminations proscribed in *Norvell?*

2 *Cert. denied,* 393 U.S. 895, 21 L. Ed. 2d 177 (1968).

Appellant has available 309 pages of testimony from his own trial, the complete transcripts of the trials of his three co-defendants, and the testimony from his 1965 habeas corpus hearing. In addition, it is customary for trial counsel to take at least rough notes of the proceedings, particularly of questionable passages in the charge of the trial court. Admittedly, these sources may not qualify as an equivalent picture for complete appellate review. *Commonwealth v. Anderson, supra.* I do not suggest, however, that appellant substantiate his claims of error by means of these sources, only that he demonstrate a colorable right to relief. His naked assertions fall short of this standard.

Mr. Chief Justice JONES joins in this dissenting opinion.