552 A.2d 1099

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William HOKE, II, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 26, 1988.

Filed Jan. 12, 1989.

■■■■■■■■■■■■

Walter M. Phillips, Jr., Philadelphia, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before KELLY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from a judgment of sentence of March 18, 1988,[1] after a jury trial regarding a November 28, 1986, automobile accident. The accident occurred on Post Road in a residential development of Northhampton Township, Bucks County and resulted in a fatal head injury to the victim, Dr. Stephen Chartan. The jury convicted the appellant of aggravated assault,[2] recklessly endangering another person,[3] and leaving the scene of an accident involving death or personal injury.[4] He was acquitted of the charge of involuntary manslaughter,[5] and simple assault.[6] For the reasons herein set forth, we affirm.[7]

1. Appellant was sentenced on March 18, 1988, to the Bucks County Correctional Facility to not less than eleven and one-half months nor more than four years eleven months for the charge of aggravated assault. For the offense of leaving the scene of an accident appellant was sentenced to prison for not less than six months nor more than twelve months, to run concurrently with the sentence imposed on aggravated assault. For the purposes of sentencing, a charge of simple assault merged into the aggravated assault charge.

2. 18 Pa.C.S.A. § 2702.

3. 18 Pa.C.S.A. § 2705.

4. 75 Pa.C.S.A. § 3742.

5. 18 Pa.C.S.A. § 2504.

6. 18 Pa.C.S.A. § 2701.

7. On May 22, 1988, appellant filed post trial motions for a new trial and in arrest of judgment. They were denied by order of February

The pertinent facts are as follows. The appellant stopped his blue Corvair on Post Road before approaching a mound of gravel that traversed the width of the street outside the victim's house. Automobiles frequently drove over nearby lawns to pass the gravel piled in the road. In order to circumvent the gravel, appellant drove his vehicle over Dr. Chartan's lawn, and then re-entered the roadway.

At this juncture an Oldsmobile backed out of a Post Road residence and parked in the middle of the street, approximately 50 feet in front of the appellant's car. Dr. Chartan emerged from the vehicle which remained parked on Post Road. As Dr. Chartan approached appellant's vehicle, appellant began to apologize for driving over the lawn. A discussion ensued in which Dr. Chartan requested appellant produce a license and vehicle registration. The appellant refused to comply with the request.

As Dr. Chartan returned to his vehicle, appellant proceeded to leave the scene by driving in the direction of Dr. Chartan's car. Dr. Chartan either jumped or was forced onto the hood of appellant's Corvair. He affixed himself to the hood by grabbing the wiper blades. After a jump or fall to the pavement, Dr. Chartan's body was found approximately 100 feet from his Oldsmobile.[8] As appellant fled the scene of accident, he observed in his rear view mirror the victim lying motionless in the street, but proceeded with his plans for the evening by visiting the homes of his parents and girlfriend. Appellant mentioned the incident to no one.

Appellant raises five issues for us to consider: 1) The trial court erred in not granting motion for a mistrial after a court employee mistakenly submitted, to a deliberating jury, an unadmitted exhibit of evidence in the nature of a scaled diagram of the accident scene; 2) The Common-

26, 1988. On March 4, 1988, appellant petitioned the trial court for permission to file supplemental post trial motions. They were denied by order of May 2, 1988. We will address the issues raised in the supplemental post trial motions even though a timely appeal to this Court was filed on March 18, 1988.

**8.** Appellant testified that after Dr. Chartan "jumped off" of the moving vehicle, he "sped up and drove away". (N.T. 4/28/87 p. 176, 177)

wealth's failure to preserve an unadmitted exhibit for the appellate process denies meaningful appellate review and warrants a new trial; 3) The evidence was insufficient to support a guilty verdict to the charge of aggravated assault; 4) The trial court erred in denying appellant's request to charge the jury on the defense of justification for leaving the scene of an accident; and 5) The trial court erred by charging the jury that it could consider appellant's flight from the scene of the accident as evidence of consciousness of guilt. We will deal with them *seriatim*.

■ Appellant's first argument is that the trial court erred in not granting appellant's motion for a mistrial after a court employee mistakenly submitted, to a deliberating jury, an unadmitted exhibit of evidence in the nature of a scaled diagram of the accident scene. Before evaluating the effect of the mistake, we must analyze the overall context in which it occurred.

The diagram contained several pieces of information relevant to the Commonwealth's case.[9] It was used as an exhibit during the testimony of Officer James Caldwell. However, the diagram was not admitted into evidence because of the presence of a skid mark on the diagram. The skid mark was discovered by the police two days after the accident. Appellant objected to the fact the Commonwealth could not offer expert testimony to connect the skid mark to the vehicle of the appellant or victim. The lower court properly sustained the objection. Consequently, the diagram was not admitted into evidence.

Nevertheless, during jury deliberations a court employee mistakenly gave the unadmitted evidence to the jury. Upon learning of the error, the trial judge immediately directed the diagram be removed from the jury room.[10] It is esti-

9. The original exhibit was lost. However, the Commonwealth offered a two-page substitute version from the police file which we have used in reviewing this appeal.

10. Pa.R.Crim.P. 1114 states that: "... the jury may take with it such exhibits as the trial judge deems proper." The intent of Rule 1114 was for the trial judge to exercise such discretion with exhibits properly

mated the evidence remained in the jury room for approximately five to eight minutes. Counsel for appellant argues the error was so prejudicial it resulted in the denial of a fair trial for his client. After careful consideration of the entire record, we disagree.

The Court has never ruled on the factual circumstances of this particular issue. However, a myriad of prior cases has set forth the legal standard used to rule on issues in which unauthorized material enters the jury room.

For example, in *Commonwealth v. Maute*, 336 Pa.Super. 394, 485 A.2d 1138 (1984), we reviewed the issue of whether the appellant was entitled to a new trial because the jury foreman took notes when the trial court, upon jury request, repeated the elements of the crime charged. The court said it is improper for a juror to take notes during a trial and use the notes in the jury room. It further ruled that since the appellant did not introduce competent evidence to establish prejudice from such conduct, he was not entitled to a new trial. *Id.*, 336 Pa.Superior Ct. at 406, 485 A.2d at 1144. *See also*, Pa.R.Crim.P. 1113, *Commonwealth v. Pierce*, 453 Pa. 319, 309 A.2d 371 (1973).

A long line of Pennsylvania cases has held that the misconduct of a juror must result in a prejudicial effect upon the defendant to justify a new trial. Any irregularity or misconduct on the part of a juror during the trial will not warrant a new trial unless it appears that the act complained of actually prejudiced the rights of the parties involved. *Fisher v. Strader*, 399 Pa. 222, 160 A.2d 203 (1960). *See also, Friedman v. Ralph Brothers Inc.*, 314 Pa. 247, 171 A. 900 (1934), *Commonwealth v. Filer*, 249 Pa. 171, 94 A. 822 (1915). *See, generally, Pierce*, 309 A.2d at 372.

admitted into evidence, and prior to the start of deliberations. *See Commonwealth v. Schwartz*, 178 Pa.Super. 434, 115 A.2d 826 (1955).

The case at bar required the trial judge to exercise discretion with an exhibit not properly admitted into evidence, and after the jury had started its deliberations. Clearly, the factual circumstances of the instant case do not fall within the purview of Rule 1114.

Granted, in the case *sub judice*, the mistake is not attributed to the actions of a juror, but rather a court employee who improperly submitted the diagram to the jury. Nonetheless, we are of the opinion that the legal standard enunciated in the aforementioned cases applies to situations where unadmitted exhibits somehow find their way into a jury room through improper actions of court personnel. Thus, when exhibits not in evidence are given to the jury by court personnel, a new trial will not be ordered unless it is shown the evidence was so prejudicial that the defendant was denied a fair trial.

In the case on hand, the diagram in question was marked for identification purposes as Commonwealth's Exhibit # 9 (C–9). It was not admitted into evidence. In fact, the trial court sustained appellant's objection when the Commonwealth was unable to offer expert evidence connecting a skid mark on the diagram to appellant's vehicle. However, during Officer Caldwell's testimony the jury had a clear view of the diagram as the Commonwealth made references to it. The skid mark remained unexplained to the jury, and the diagram lacked any identifying references to the skid mark.

After the exhibit was discovered in the domain of the jury room during deliberations, the trial judge immediately ordered its removal. The estimated time the diagram remained in the jury room totaled only five to eight minutes. Immediately thereafter, the trial judge inquired whether the jurors could continue deliberations without reference to the unadmitted exhibit. The foreperson informed the trial court that the jury could definitely proceed without reference to the diagram. The trial judge then reswore the jury with the cautionary instruction that their deliberations must not include any reference to the diagram.

In summation, the jurors had a prior exposure to the exhibit during the trial as the Commonwealth made references to it. At the outset of deliberations it entered the jury room for a relatively inconsequential period of time. Precautionary instructions were given to the jury immedi-

ately after the exhibit was removed to ensure it would not be a factor in the jury's decision. Prejudice is *sine qua non* of the appellant's right to a new trial. Under the factual circumstances of the case at bar, we find the presence of the diagram in the jury room had no prejudicial effect on appellant's right to a fair trial.

■ Appellant's next argument is that the Commonwealth's failure to preserve the unadmitted exhibit for the appellate process denies meaningful appellate review and warrants a new trial. We disagree.

The appellant failed to raise this issue before the trial court, and therefore it has not been properly preserved for appeal. However, we shall briefly discuss the matter due to its direct relevance to our ruling on appellant's first argument.

In order to assure a defendant's right to appeal will not be an illusory right, we require he or she receive a full transcript or other equivalent picture of the proceedings. Meaningful appellate review is otherwise impossible, and fairness dictates a new trial be granted. *Commonwealth v. Goldsmith*, 452 Pa. 22, 304 A.2d 478 (1973). The burden is on the prosecution to make available a full record or its equivalent. *Id.* 304 A.2d at 482.

In the case on hand the Commonwealth offered a substitute two-page version of Exhibit C–9 taken from police investigative files. Moreover, the substitute copy of the diagram matches the verbal description contained in the notes of testimony.

THE COURT: I looked at it carefully. In and of itself it contains no English language with reference to any mark on it. There are some modest notations. The location of the mark which was referred to earlier is totally ambiguous, and didn't specify anything whatsoever. . . .

MR. PHILLIPS: May I state for the record, Your Honor, the markup on the diagram, so the record is clear, is on the Post Road between 104 and 108, and next to a vehicle marker which appears in the diagram.

THE COURT: Which vehicle marker was to represent the location of the victim's vehicle when it was at rest?

MR. PHILLIPS: Your Honor, because I think that mark contends where the victim's vehicle was when it was at rest was on the other side of—

THE COURT: I don't know about that. But I see some kind of representation of a vehicle there. (N.T. 11/28/87 p. 242)

"Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844 (1978), quoting *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

Instantly, the description in the foregoing notes of testimony adequately describes the substituted diagram. The skid mark in question contains no label or written reference whatsoever and is located between 104 and 108 Post Road. Other notations appear on the substitute diagram such as street addresses, the location of the gravel pile, and a vehicle marker representing the victim's car located between 104 and 108 Post Road.

In our view, the substitute version of the diagram which we have used in reviewing this appeal adequately matches the description of the original diagram contained in the notes of testimony. As such, we find the appellant has not been denied meaningful appellate review by the loss of the original diagram.

■ The third argument appellant proffers is that the evidence was insufficient to support a guilty verdict to the charge of aggravated assault.

In determining whether evidence is sufficient to support a conviction we must accept as true all evidence, and reasonable inferences therefrom, upon which the fact finder could have based its verdict. *Commonwealth v. Crawford*, 334 Pa.Super. 630, 483 A.2d 916 (1984). We must view the evidence in the light most favorable to the verdict winner

and draw all the reasonable inferences that the evidence permits in favor of the verdict winner. *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). When reviewing the sufficiency of the evidence, an appellate court may not substitute its judgment for the jury's. *Commonwealth v. Carroll*, 510 Pa. 299, 507 A.2d 819 (1986).

The crime of aggravated assault requires that a person act, "intentionally, knowingly, or recklessly under the circumstances manifesting extreme indifference to the value of human life".[11] Appellant contends the manner in which he operated his car at the time of the accident does not establish reckless conduct because there was no evidence of excessive speed. We are not persuaded by this argument.

The general requirements of culpability are set forth in 18 Pa.C.S.A. § 302. A careful purview of the entire record indicates that appellant's *mens rea* and *actus reus* satisfy not only the reckless element of the crime, but also the intentional and knowing elements. Appellants extreme indifference to the value of human life was adducable at trial during the Commonwealth's cross-examination.

Q. When Dr. Chartan was on the hood of your car, isn't it a fact that you just wanted him to disappear?

A. Yes. ...

Q. You were aware of the potential danger to Dr. Chartan while he was on the hood of your car, weren't you?

A. Yes. ...

Q. Would you agree that he could have been on your car for a distance as long as 99 feet?

A. Could have been. ...

Q. But you wanted him to disappear?

A. I wanted him off the car.

Q. You wanted him off the car and you wanted him off the car because you were upset about the trouble that you might be in?

11. 18 Pa.C.S.A. § 2702(a)(1).

A. Yes.

(N.T. 4/28/87 p. 191–194)

Despite admitting awareness of the potential danger to Dr. Chartan, appellant made a conscious decision to continue driving approximately 100 feet with the victim perched on the hood. Clearly, appellant intentionally engaged in the conduct of driving his car forward, knowing such conduct was practically certain to cause bodily injury, if not death, to the victim. Not only were appellant's actions knowing and intentional, but certainly the jury could find that his decision to continue driving forward, with the intention the victim "disappear" from the hood, was in fact a reckless act. Therefore, we find the evidence sufficient to support the jury's determination that the appellant was guilty of aggravated assault.

■ Appellant's next argument is that the trial court erred in denying his request to charge the jury on the defense of justification for leaving the scene of an accident. He maintains there was sufficient evidence in the record to support the charge. We disagree.

Appellant has failed to establish the requirements that would entitle him to the charge. They are as follows:

(a) **General rule.**— Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(b) **Choice of evils.**— When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is

unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503.

In order to be entitled to an instruction on justification as a defense to a crime charged, the actor must first offer evidence that will show he was faced with a clear and imminent harm, not one which is debatable or speculative. *Commonwealth v. Capitolo,* 508 Pa. 372, 498 A.2d 806 (1985).

The record reveals the appellant was in the protective confines of his vehicle when Dr. Chartan approached the Corvair. Dr. Chartan did not verbally or physically threaten the appellant. In fact, he returned to his Oldsmobile after appellant refused to produce a license and vehicle registration.

Appellant testified Dr. Chartan jumped onto the hood of the Corvair as he started to drive away from the initial encounter. However, on cross-examination the Commonwealth indicated the victim may have been forced onto the hood as appellant's car passed within a few feet of the victim's automobile. Thus, ambiguity exists as to the identity of the actual aggressor. Nonetheless, after the victim fell or jumped from the Corvair, appellant observed in his rear view mirror Dr. Chartan lying still in the street.

Clearly, any harm that might have befallen appellant was indeed debatable and speculative. No verbal or physical threats were made prior to the accident. Appellant observed the victim lying motionless on the ground after the tragic mishap. Common sense indicates that serious injury is likely to occur after a fall or jump from a moving vehicle traveling at even a modest speed. Unfortunately, Dr. Chartan sustained fatal wounds from the incident.

As such, we find no merit in appellant's contention that following the accident he was faced with clear and imminent harm to his personal safety. We therefore must turn aside appellant's argument that he was justified in leaving the scene of the accident.

■ Appellant's final argument is that the trial court erred when it charged the jury that it could consider appellant's flight from the scene of the accident as evidence of consciousness of guilt. He maintains there is no evidence proving his departure from the scene was motivated by the belief law enforcement officials would seek him in connection with the accident. We are not persuaded by this argument.

A thorough perusal of the record shows there was sufficient circumstantial evidence to prove the appellant knew he was or would be accused of committing a crime. *Commonwealth v. Hailey*, 332 Pa.Super. 167, 480 A.2d 1240 (1984). *See also, Commonwealth v. Osborne*, 433 Pa. 297, 249 A.2d 330 (1969).

Appellant saw the victim lying still on the ground after the accident. Nonetheless, he left the scene and continued with his social plans for the evening. He visited the house of his parents, and then his girlfriend. At no time did he mention the incident to anyone. Doubtless, appellant was aware he committed a crime and was conscious of guilt. For the foregoing reasons we must deny appellant's fifth and final argument.

In conclusion, we find the presence of the unadmitted diagram in the jury room did not have a prejudicial effect upon appellant's right to a fair trial. Second, appellant has not been denied meaningful appellant review by the loss of the original diagram introduced as an exhibit at the trial. Third, the evidence was sufficient to support the jury's determination that the appellant was guilty of aggravated assault. Fourth, the trial court did not err in denying appellant's request to charge the jury on the defense of justification for leaving the scene of an accident. And finally, the trial court did not err in charging the jury that it could consider appellant's flight from the scene of the accident as evidence of consciousness of guilt.

JUDGMENT AFFIRMED.