**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Rachel J. PACKARD, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 2000.
Filed Jan. 24, 2001.

Brian S. Gaglione, Asst. Dist. Atty., Stroudsburg, for Com., appellant.

Michael R. Muth, Public Defender, Stroudsburg, for appellee.

Before STEVENS, LALLY–GREEN, and OLSZEWSKI, JJ.

STEVENS, J.:

¶ 1 The Commonwealth appeals from the Court of Common Pleas of Monroe County's order granting Appellee Rachel Packard's request for pre-trial habeas corpus relief on charges of Aggravated Assault[1] and Attempted Homicide.[2] After careful consideration, we hold that the Commonwealth established prima facie cases for both charges. Accordingly, we reverse and remand.

¶ 2 On the evening of June 22, 1999, Appellee was driving her late model Acura Integra on Helen Drive in Stroud Township, Monroe County when her passenger threw a fast-food bag onto the property of Mrs. Gertrude Transue. N.T. 9/20/99 at 6. Seeing her yard littered, the seventy-two year-old Transue walked across Helen Drive and picked up the discarded fast food bag, only to throw it at Packard's car in frustration when Packard drove by a

---

1. 18 Pa.C.S.A. § 2702(a)(4).

2. 18 Pa.C.S.A. § 901(a).

second time. N.T. at 15–16. At this rebuke, Packard made yet another U-turn, crossed the median line into the wrong lane of traffic, and struck Transue with her car. N.T. at 18–19; N.T. 9/22/99 at 6–7.

¶ 3 The Commonwealth's evidence showed that Packard applied her brakes approximately one foot before hitting Transue at a velocity of about fifteen miles per hour. N.T. 3/3/00 at 6, 10. Transue was upended onto the hood of Packard's car and her head cracked the windshield, after which she was thrown approximately seventeen feet to a roadside spot where she then lay unconscious. N.T. 9/22/99 at 13, 26. Packard sped from the scene without offering aid, but an eyewitness alerted Transue's husband and he called for emergency assistance. N.T. 9/20/99 at 11; N.T. 9/22/99 at 7. Stroud Township Police also received a radio dispatch regarding the incident and arrested Packard seven miles away at a gas station. N.T. 9/22/00 at 19–20. As a result of the collision, Mrs. Transue suffered massive trauma and was diagnosed with permanent paralysis over much of her body. N.T. 9/20/99 at 11.

¶ 4 Packard was charged with Attempted Homicide, two counts of Aggravated Assault, and related charges, which were held over for trial following her preliminary hearing. Packard thereafter petitioned for habeas corpus relief and a hearing was held on March 3, 2000, where the trial court received into evidence transcripts from the preliminary hearing as well as the expert testimony of the Pennsylvania State Trooper who prepared the accident reconstruction report. On March 14, 2000, the trial court ruled that the charge of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(1)[3] would go to trial, but it dismissed the counts of Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(4) and Attempted Homicide for what it believed was insufficient proof that Packard

possessed a specific intent to kill or that she used her vehicle as a deadly weapon.

¶ 5 The Commonwealth filed a timely notice of appeal pursuant to Pa.R.A.P. 311(d), indicating that the trial court's dismissal substantially handicapped the Commonwealth's case. This appeal follows.

¶ 6 The Commonwealth argues that whether Packard acted with the specific intent to kill and whether she used her car as a deadly weapon are proper jury questions since the circumstantial evidence of the case, at the very least, prima facie establishes both elements. The trial court, however, opines that Packard's use of brakes and the vehicle's resultant reduced speed at impact undermines the Commonwealth's prima facie case. Specifically, the court distinguishes this case factually from other decisions where a car was categorized as a deadly weapon for purposes of the Crimes Code. *See Commonwealth v. Thomas*, 440 Pa.Super. 564, 656 A.2d 514 (1995) (car qualified as deadly weapon where it jumped curb, struck children on a playground swing set, and continued travel with children on the hood); *Commonwealth v. Hoke*, 381 Pa.Super. 70, 552 A.2d 1099 (1989) (car qualified as deadly weapon where it drove 100 feet with victim on the hood).

¶ 7 This Court's scope of review in a pre-trial habeas corpus case is to determine whether a prima facie case was established. In that vein, we may only reverse a decision to grant a petition for a writ of habeas corpus where the trial court has committed a manifest abuse of discretion. *Commonwealth v. Lundberg*, 422 Pa.Super. 495, 619 A.2d 1066 (1993).

¶ 8 A prima facie case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. *Commonwealth*

---

**3.** Section 2702(a)(1) proscribes the attempt to cause serious bodily injury to another or the cause of such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life.

*v. Fowlin,* 450 Pa.Super. 489, 676 A.2d 665 (1996); *Commonwealth v. Jury,* 431 Pa.Super. 129, 636 A.2d 164 (1993). In determining the presence or absence of a prima facie case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such. *Fowlin, supra.*

¶ 9 Stated another way, a prima facie case in support of an accused's guilt consists of evidence that, if accepted as true, would warrant submission of the case to a jury. *Commonwealth v. Austin,* 394 Pa.Super. 146, 575 A.2d 141 (1990). Therefore, proof of the accused's guilt beyond a reasonable doubt need not be established at this stage. *Id.*

¶ 10 To prove a charge of Attempted Homicide, the Commonwealth must establish that the accused took a substantial step toward committing homicide, with the specific intent to kill. 18 Pa.C.S.A. § 901(a). Such specific intent may reasonably be inferred from an accused's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Hobson,* 413 Pa.Super. 29, 604 A.2d 717 (1992). Likewise, use of a deadly weapon is a requisite element of Aggravated Assault under Section 2702(a)(4). We first examine, therefore, whether sufficient evidence exists to satisfy the deadly weapon requirement of each charge.

¶ 11 The Crimes Code defines a "deadly weapon" as, *inter alia,* any device which, in the manner in which it is used, is likely to produce death or serious bodily injury. 18 Pa.C.S.A. § 2301. This Court has recognized that although a properly used automobile may not be inherently dangerous it may become a deadly weapon depending on how it is used. "Motor vehicles still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today." *Commonwealth v. Scales,* 437 Pa.Super. 14, 648 A.2d 1205, 1209 (1994). *See Com-monwealth v. Battiato,* 422 Pa.Super. 285, 619 A.2d 359 (1993) (upholding conviction under Section 2702(a)(4) where appellant backed his car over the victim causing serious bodily injury).

¶ 12 Here, Packard deliberately steered her car across the median line, took aim, and drove it straight into an obviously elderly pedestrian at approximately fifteen miles per hour. There is no question that Packard's use of her car in this manner was likely to cause Transue serious bodily injury, notwithstanding her use of brakes immediately before impact. Indeed, the car did great violence to Transue and left her permanently paralyzed. We therefore find that the Commonwealth's evidence sufficed to allow a jury to decide if Packard used her vehicle as a deadly weapon.

¶ 13 We must next determine whether the Commonwealth has made a prima facie case of Packard's culpability under each charge. As noted above, evidence that the accused took a substantial step toward the commission of a killing while possessing the specific intent to so kill is required to convict the accused of Attempted Homicide. *Hobson, supra.* To prove Section 2702(a)(4) Aggravated Assault, it must be shown that, *inter alia,* the accused held a conscious objective to cause, or was practically certain that her conduct would cause, another serious bodily injury. 18 Pa.C.S.A. §§ 2702(a)(4), 302(b); *Thomas, supra.*

¶ 14 Though a jury may find, as the trial court has, that Packard's braking demonstrated her renunciation of the intent, objective, or knowledge requisite to the charges at hand, the totality of Packard's pernicious conduct may reasonably lead a jury to find instead that Packard braked for other reasons, such as concern for herself or for her car. Thus, it would not be incongruous with the evidence for a jury to find that Packard held a specific intent to kill Transue, or that she consciously set out to cause, or knew that her conduct

would cause, Transue serious bodily injury. Therefore, we reject the trial court's opinion that Packard's last-second braking necessarily exculpates her as a matter of law. To hold otherwise would create rules of law with regard to criminal attempt and aggravated assault not contemplated by the Legislature.

¶ 15 Accordingly, we find that the trial court committed a manifest abuse of its discretion when it granted habeas corpus relief, as the Commonwealth had met its burden of establishing at least prima facie that Ms. Packard committed the acts proscribed under 18 Pa.C.S.A. §§ 901(a) and 2702(a)(4). We therefore reverse and remand for further proceedings consistent with this opinion.

¶ 16 Reversed and Remanded. Jurisdiction relinquished.