575 A.2d 141

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert AUSTIN, Appellee.**

Superior Court of Pennsylvania.

Argued March 20, 1990.

Filed April 27, 1990.

Ann Lebowitz, Asst. Dist. Atty., Philadelphia, for Com.

George Henry Newman and David M. McGlaughlin, Philadelphia, for appellee.

Before OLSZEWSKI, JOHNSON and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order granting defendant-appellee's motion to quash a murder charge, bill of information no. 3251. The motion to quash was granted because there was nothing in the evidence to indicate an intentional killing or that malice was present or could be inferred.

The Commonwealth requests that we reverse the order and remand the case for trial, contending that evidence presented at the preliminary hearing established the elements of premeditation and malice. We find that the Commonwealth has failed to prove its argument; consequently, we affirm.

Appellee was charged with murder, voluntary manslaughter, involuntary manslaughter, and possessing an instrument of crime—a knife. After a preliminary hearing on March 23, 1988, the court found sufficient evidence to establish a *prima facie* case of murder and possession of an instrument of crime. On March 6, 1989, a hearing was held before trial court Judge McKee on defendant-appellee's motion to quash the murder count. Judge McKee quashed count 1 charging murder. Subsequently, upon the Commonwealth's motion, Judge McKee vacated his order and transferred the matter to Judge Manfredi, sitting as homicide calendar judge, pursuant to Philadelphia Criminal Rule

605. Judge Manfredi's order, once again quashing the murder charge, is the subject of this appeal.

The evidence presented at the preliminary hearing follows. It was stipulated that the decedent was Raymond Adams; that the date of his death was September 20, 1987; that previously Adams was a life in being; and that the cause of death was a stab wound to the abdomen. (N.T. 3/23/88 at 3.) The only evidence presented by the Commonwealth was a statement made by Robert Austin to the police. In pertinent part, it is as follows:

Q. Detective Alexander, will you go on at this time and read the statement given to you by Mr. Austin at that time?

A. Okay. On page one of the interview, the first question was: "Question: Robert, tell me in your own words what happened at approximately nine p.m. on 9–,9–87 that caused you to stab Raymond Adams outside the bar at Broad and Glenwood Streets?

Answer: I was in the bar approximately forty-five minutes before this happened.

From the time I walked in Sandy started to argue with me. I couldn't understand it, because I had been out with her and the guy I stabbed. I don't know his name, the night before.

We had been drinking together, and we went to a party together.

After the party, we all went our own way.

Friday night before we left the party I had asked her for some money, and she told me that she got paid Saturday, and for me to stop by the bar. That's why I was at the bar Saturday night.

While she was arguing with me, the owner of the bar came over and told her to leave. I got up and went to the bathroom.

When I came out, Sandy was still behind the bar getting her stuff together.

150

About five minutes went by, and me, Raymond, Sandy, and two of Sandy's cousins, a male and a female, left the bar together.

When we went outside, I tried to talk to Sandy to find out why she was mad at me. I started to walk towards Sandy, but this guy Raymond was between us. He had this look on his face sort of a threatening look.

I told him to stay out of it, because he had nothing to do with it.

He had something in his hand, but I could not see what it was. I went past him toward Sandy, and then Raymond hit me in the head with a pipe, or stick or something.

I stumbled and turned around. He came at me, and as he was swinging whatever he had, as he was swinging what it was there he had, I put up my left hand and he hit me. As he was doing this, I pulled out my knife. I had it in my hand, and I swung the knife at him swinging (indicating an upward motion from the waist). And if I thought about it twice, I was swinging again, but I changed my mind, because he was on the defense now. So I just turned around and left.

When I walked away, he was still standing.

Then Sandy said, "I know where you live, and I know where your sister lives."

I looked back, and when I did, Raymond was laying on the ground.

\* \* \* \* \* \*

Question: Where did you get the knife?

Answer: I had it with me. I carry it on Friday and Saturday nights because it's bad out on the streets.

\* \* \* \* \* \*

Question: How many times did Raymond hit you?

Answer: All together, about three or four times...."

(N.T. 3/23/88 at 7–11.)

At a preliminary hearing the Commonwealth bears the burden of establishing a *prima facie* case that a crime

has been committed and that the accused is probably the one who committed it. *Commonwealth v. Wojdak,* 502 Pa. 359, 367, 466 A.2d 991, 995 (1983). To sustain that burden the Commonwealth must produce evidence that, if accepted as true, would warrant the trial judge to allow the case to go the the jury. *Id.* at 995–996. The *prima facie* standard requires that the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence as to the existence of a material element is fatal. *Id.* at 996–997. This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt. *Commonwealth v. Snyder,* 335 Pa.Super. 19, 23, 483 A.2d 933, 935 (1984).

Murder is defined as follows:

§ 2502. **Murder**

(a) **Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) **Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) **Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

(d) **Definitions.**—As used in this section the following words and phrases shall have the meaning given to them in this subsection:

\* \* \* \* \* \*

**"Intentional killing."** Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing.

18 Pa.C.S.A. § 2502.

In order to establish murder in the first degree, the Commonwealth must prove that Austin specifically in-

tended to kill, which, in turn is proved by evidence of premeditation and deliberation. *Commonwealth v. Garcia,* 505 Pa. 304, 310, 479 A.2d 473, 476 (1984). Although the period of premeditation necessary to form the specific intent to kill may be very brief, *see Commonwealth v. Chimenti,* 362 Pa.Super. 350, 381, 524 A.2d 913, 929, *appeal denied* 516 Pa. 639, 533 A.2d 711 (1987), from the evidence presented at the preliminary hearing, we cannot find even a scintilla of evidence indicating that Austin wanted to kill the victim before or during the time he swung the knife at victim. The Commonwealth argues that the mere fact that Austin used a knife on a vital part of the victim's body is enough to show that it is more likely than not that Austin specifically intended to kill the victim.[1] Specifically, Commonwealth alleges that "defendant intentionally withdrew a long, concealed knife and plunged it into victim's abdomen, a deliberate and dangerous act which alone established his malice, as well as his specific intent to kill." (Commonwealth's brief at 9.) The evidence presented at the preliminary hearing does not support the Commonwealth's position. Austin admitted he intentionally pulled out his knife. Austin then stated that, "I swung the knife at him swinging (indicating an upward motion from the waist). And if I thought about it twice, I was swinging again...." (N.T. 3/23/88 at 9.) The Commonwealth construes this evidence to indicate that Austin's focus was on plunging the knife into the victim, from which it can be inferred that Austin intended to kill the victim. The evidence, however, supports the position that Austin's focus was on swinging the knife and not on stabbing the victim.

The Commonwealth's argument centers on the use of the knife itself to cause the death; however, the physical act of

1. Commonwealth cites the following cases:
*Commonwealth v. McAndrews,* 494 Pa. 157, 430 A.2d 1165 (1981); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Ingram,* 440 Pa. 239, 270 A.2d 190 (1970); *Commonwealth v. Frederick,* 327 Pa.Super. 199, 475 A.2d 754 (1984); *Commonwealth v. Baylor,* 323 Pa.Super. 9, 469 A.2d 1134 (1983); and *Commonwealth v. Clark,* 270 Pa.Super. 441, 411 A.2d 800 (1979) (allocatur denied), *cert denied,* 446 U.S. 944, 100 S.Ct. 2170, 64 L.Ed.2d 799 (1980).

using the knife on a vital area is not the proper focus. The proper focus for determining the mental component of the crime is how appellant intended to use the knife or what caused the knife to come into contact with a vital area of a human body. A specific intent to kill and malice are properly implied when a deadly weapon is *directed* to a vital part of the body. *Commonwealth v. Roberts*, 496 Pa. 428, 431–32, 437 A.2d 948, 951–952 (1981); *Commonwealth v. Carter*, 481 Pa. 495, 497, 393 A.2d 13, 15 (1978); and *Commonwealth v. Palmer*, 448 Pa. 282, 284, 292 A.2d 921, 923 (1972). In other words, what did Austin intend to do with the knife: was it his intention to put the knife into the victim or was it his intention to do something else.

In the case before the bar, the preliminary hearing judge had to determine from the evidence what Austin's intentions were up to and including the moment of the knife's contact with victim. There is no evidence that the knife was directed at a vital part of the victim's body. Austin admitted to swinging the knife and the Commonwealth presented no other evidence concerning this issue. The judge found that Austin did not intend to direct the knife into victim's body. We agree.

Commonwealth does not contend that Austin's actions constitute second-degree murder. We must, therefore, analyze whether it is more likely than not that Austin's actions constitute third-degree murder. Third-degree murder does not require a specific intent to kill although it does require malice. *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 287, 444 A.2d 1176, 1178 (1982). Malice is an essential element of murder in the third degree and is the distinguishing factor between manslaughter and murder. *Commonwealth v. Young*, 494 Pa. 224, 227, 431 A.2d 230, 232 (1981). "Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Id.* at 232 (internal citations omitted). The preliminary hearing court did not find any of

these indicia to be present. We agree. A review of the Commonwealth's evidence reveals the actions and frame of mind of a man responding to an attack from behind.

Malice may be inferred from the attending circumstances. *Id.* Previously in this opinion, we determined that malice could not be inferred from Austin's use of a knife to stab victim. That determination holds true for third-degree murder as well as first-degree murder.

The order quashing bill of information no. 3251 is affirmed. This case is remanded to the Court of Common Pleas of Philadelphia County. Jurisdiction relinquished.