J-S34034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAMONT CARLOS SNIDER | : | |
| | : | |
| Appellant | : | No. 1325 WDA 2021 |

Appeal from the Judgment of Sentence Entered September 21, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003155-2019

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:               **FILED: OCTOBER 21, 2022**

Lamont Carlos Snider (Snider) appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County (trial court) after a jury convicted him of attempted murder, aggravated assault and possession of an instrument of crime.[1]  Snider contends that the Commonwealth failed to present sufficient evidence to (1) convict him of attempted murder or (2) disprove his self-defense claim.  After review, we affirm.

**I.**

On October 5, 2019, the victim, Rashod Crockett (Crockett), got off work around 10:00 p.m. after working a double shift as a corrections officer at a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a)/2501(a), 2702(a)(1) and 907(a), respectively.

state prison. Crockett drove home and picked up his friend Carl Nickson (Nickson) to go out drinking to celebrate Crockett's birthday. The two went to several bars before finally ending up at a bar called Scooters. Crockett, who described himself as a regular at the bar, guessed that he had "around four to six drinks throughout the night." Snider was also at the bar that night, along with his cousin Deverick Ohmer (Ohmer). Snider and Crockett knew each other but were not friends because of a minor dispute at the bar a few months before.

Around closing time at 2:00 a.m., a man at the bar began arguing with the bartender. Crockett, who knew the bartender, tried to help by telling the man to leave. After the man left, however, Snider approached Crockett and began calling him a "cop" and "a f----- rat" because he knew that Crockett was a corrections officer. The two argued and then briefly exchanged punches until they were separated. Crockett left and went back to his place a couple of blocks away, while Snider stayed and went out into the parking lot.

Back at his place, Crocket spoke briefly to his fiancé before driving back to Scooters in her car. After pulling into the parking lot, Crockett got out and walked toward the entrance. As he got closer, he noticed Snider there with Ohmer and Nickson. According to Crockett, he and Snider began to argue again, with Snider telling him, "I'm about to f-- you up." Upon hearing this, Crockett punched Snider "hard" in the face, breaking his orbital bone. The two men then scuffled and fell to the ground. Crockett, however, quickly saw

that his t-shirt was covered in blood. Realizing that Snider had stabbed him, Crockett turned and tried to run away but Snider quickly chased him and stabbed him several more times. Snider then got into a car and fled. Crockett, meanwhile, was rushed to a hospital for surgery to treat multiple stab wounds. Crockett stayed in the hospital for nearly two weeks before being released to a rehabilitation facility.

Snider was arrested a few days later and gave a voluntary statement. Snider admitted that he fought Crockett but denied having a knife or ever stabbing him. According to Snider, when Crockett returned to the parking lot, he walked to him with his hand behind his back, prompting someone to ask Crockett if he had a gun. Crockett, however, continued on and punched Snider, after which Snider claimed he blacked out until he realized that he had been cut by something, at which point he stopped fighting and left.

Snider did not testify at trial but presented a self-defense claim, calling his cousin Ohmer as a witness. Ohmer gave a similar version to that given by Snider. At the end of the trial, the jury found Snider guilty of the above-listed offenses, and the trial court sentenced him to serve an aggregate 10½ to 21 years' imprisonment.[2] After denial of his post-sentence motion, Snider filed this appeal to raise these two issues:

_____

[2] The trial court imposed 10½ to 21 years' imprisonment on attempted murder (count one); merged aggravated assault (count two) with attempted murder;

I. Is the evidence of record insufficient as a matter of law to support Mr. Snider's conviction for Attempted Murder where the Commonwealth failed to prove beyond a reasonable doubt that Mr. Snider possessed the requisite specific intent to kill; that, while possessing the specific intent to kill, Mr. Snider took a substantial step toward the killing; that Mr. Snider acted with malice, a necessary element of attempted murder; and where the evidence presented at trial demonstrates, at best, that Mr. Snider acted in imperfect self-defense, which negates the element of malice?

II. Is the evidence insufficient as a matter of law to sustain Mr. Snider's convictions for Attempted Murder and Aggravated Assault where the Commonwealth failed to prove beyond a reasonable doubt that Mr. Snider did not act in self-defense?

Snider's Brief at 5.[3]

_____

and imposed a concurrent 6 to 12 months' imprisonment on possession of an instrument of crime (count three).

[3] Our standard of review for both issues is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the

## II.

In his first issue, Snider challenges the sufficiency of evidence for his attempted murder conviction. As laid out above, Snider argues that (1) the Commonwealth failed to prove that he specifically intended to kill Crockett, and (2) that the element of malice should be added to attempted murder.

## A.

Under Section 901 of the Pennsylvania Crimes Code, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Additionally, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a).

> [A]ttempted murder is composed of two primary elements: the *mens rea* element of the offense is specific intent to kill, which is identical to the *mens rea* element of murder in the first degree. The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

**Commonwealth v. Predmore**, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (citations omitted).

---

> credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Lopez**, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

"A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." ***Predmore***, 199 A.3d at 929 (citation omitted). "[S]pecific intent [to kill] may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1292 (Pa. Super. 2018). As our Supreme Court has recognized, "the fact that a victim suffered injuries to a vital body part is not dispositive for a sufficiency analysis." ***Commonwealth v. Holt***, 273 A.3d 514, 529 (Pa. 2022).

Additionally, the Commonwealth does not prove the *mens rea* element of attempted murder by simply showing that the defendant took a substantial step toward killing another person. As we have explained, "[o]ne does not commit the crime of attempted murder by taking a substantial step toward forming or possessing the intent to kill, whatever that would mean. A person commits the crime of attempted murder when, *while* possessing the intent to kill, he or she takes a substantial step toward killing the victim." ***Predmore***, 199 A.3d at 930 (emphasis in original).

Snider contends that the Commonwealth failed to present sufficient evidence for attempted murder because any stab wounds to a vital part of Crockett's body were justified while all others were not done with an intent to kill. Because Crockett was the initial aggressor, Snider contends that the use of deadly force in stabbing Crockett in the torso during this part of the fight

was justified. As to the stabbings that he inflicted after chasing down Crockett, Snider contends that this could not be attempted murder because Crockett could not remember where Snider stabbed him during this part of the fight. As a result, Snider argues that the Commonwealth failed to prove that he had a specific intent to kill at the same time as he stabbed Crockett in a vital part of the body.

The problem with this argument is that it depends on a series of inferences in his favor. Because this is sufficiency review, however, we are bound to review all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner. After doing so, we find there was enough evidence for the jury to conclude that Snider intended to kill Crockett.

In arriving at this conclusion, we review the evidence chronologically. First, as an initial matter, the evidence leading up to the fight in the parking lot did not necessarily show that Crockett was the aggressor inside the bar. Crockett testified that Snider first approached him inside the bar and began "rattling on" by calling Crockett a "cop" and "f------ rat." N.T., 7/12/21, at 35. Crockett's testimony was supported by video surveillance showing him at the bar and Snider beginning to yell and gesture at him and become more agitated. *Id*. at 43-45 (Commonwealth's Exhibit 2; Timestamp 2:10:46 - 2:12:53). The two then had a brief exchange of punches before others quickly broke it up, after which Crocket left. *Id*. at 49-50.

Crockett then returned to the bar to check on his friend because he was outside sleeping on a bed when he left. *Id*. at 54. When asked why he drove back in his fiancé's car rather than his own, Crockett testified "just in case [Snider] was still there" because he "didn't want any further issues." *Id*. at 55. Thus, the jury was free to believe Crockett's claim that he returned to the bar to help his friend rather than seek out Snider.

Next, moving to the fight in the parking lot, Crockett testified that he walked toward the entrance until he saw Snider. *Id*. at 56. He also testified that he did not have any kind of weapon—gun or knife—on him. *Id*. at 59. He also denied hearing anyone say that "he has a gun" as walked toward the group. *See* N.T., 7/13/21, at 18-19. Again, the jury was free to credit his version of events and disbelieve Snider's claim that he thought Crockett might have a gun.

Likewise, the jury was free to conclude that Snider stabbing Crockett was not justified even though Crockett punched him first. Crockett testified that as walked up to the bar's entrance, Snider began to argue with him again and told him, "I'm about to [f---] you up." N.T., 7/12/21, at 57. After hearing this, Crockett decided to preemptively punch Snider. When asked why he hit Snider first, Crockett replied, "Well, he just threatened me, and he said, I'm about to [f---] you up. He was very aggressive, so I hit him." *Id*. at 58. Contrary to Snider's seeming belief, the jury did not need to conclude that Snider's use of deadly force was justified because he believed it was necessary

to protect himself against death or serious bodily injury; that he did not provoke "the use of force against himself in the same encounter"; or " [knew] that he [could] avoid the necessity of using such force with complete safety by retreating[.]" 18 Pa.C.S. § 505(b)(2) (use of deadly force). Indeed, whether Snider's use of deadly force was justified was a factual question for the jury to resolve based on competing evidence. On this point, the jury could credit Crockett's testimony and find that Snider's use of a knife in response to Crockett's preemptive punch was not a justified use of deadly force.

As a result, as the jury was free to find that none of the stab wounds were justified, we are also unconvinced by Snider's attempts to minimize the evidence that he chased Crockett to stab him more. As noted, Snider faults Crockett for not being able to explain where Snider stabbed him. Crockett, however, testified that Snider stabbed him "a few more times" after he chased him and stood over top of him. *See* N.T., 7/12/21, at 60. When asked about the wounds he suffered, Crockett explained that he suffered two to his stomach; another stab wound above his right buttock; a stab wound below his left buttock; and two other stab wounds. *Id*. at 80-81. As confirmed by his medical records admitted at trial, the stab wounds were serious enough to require Crockett to have ex lap surgery and small bowel repair. *See* N.T., 7/13/21, at 129 (Commonwealth's Exhibit 10). Those records also showed Crockett suffered a stab wound to the distal part of his upper arm. *Id*. He

described this wound during the fight, explaining that blood was squirting out of his arm with every beat of his heart. **See** N.T.,7/12/21, at 61.

Even though Crockett could not recall where he was stabbed at what points during the fight, there was still evidence that Snider stabbed Crockett no less than six times in his chest and torso, posterior and arms. Again, the jury was not required to find, as Snider seems to believe, that any of these stab wounds were a justified use of deadly force simply because Crockett punched him after Snider threatened him. Instead, the jury was free to find not only that Snider's decision to use a knife in what was essentially a fist fight was not justified, but also that Snider intended to kill Crockett and took a substantial step to do so when he chased him and continued to stab him.[4] That Snider intended to kill Crockett was no doubt strengthened by the fact that he gave an implausible statement to the police in which he claimed he never had nor used a knife despite Crockett's multiple stab wounds.

---

[4] In his brief, Snider claims that this case is analogous to **Commonwealth v. Austin**, 575 A.2d 141 (Pa. Super. 1990). There, this Court affirmed quashing of a murder charge where the defendant stabbed the victim once after the victim hit him in the head with an object. **Id**. at 143. There was no evidence that the defendant directed the knife at a vital part of the body, only that he swung the knife. **Id**. at 144-45. This differs from the facts in this case where Snider not only stabbed Crockett multiple times; chased him as Crockett staggered away; and then later gave a statement to the police denying that he ever had or used a knife. Necessarily. we find that Snider's efforts to analogize this case to **Austin** unavailing.

Accordingly, based on these facts, we find that there was sufficient evidence for the jury to convict to find that Snider had a specific intent to kill Crockett and took a substantial step toward that goal.[5]

**B.**

Snider also argues that the Commonwealth failed to present sufficient evidence that he acted with malice. He acknowledges that malice is not an element of attempted murder under current Pennsylvania case law, but still contends that this line of precedent is "plainly erroneous" and should be revisited and clarified, if not overruled.

We need not spend much time on this argument since "[t]his Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." **Commonwealth v. Slocum**, 86 A.3d 272, 278 n. 9 (Pa. Super. 2014) (citing **Dixon v. GEICO**, 1 A.3d 921, 925–26 (Pa. Super. 2010)). Indeed, as Snider concedes in his brief, "this Court has consistently held that malice is not an element of attempted murder." **Commonwealth v. Cannavo**, 199 A.3d 1282, 1292 (Pa. Super. 2018) (citing **Commonwealth v. Geathers**, 847 A.2d 730, 736 (Pa. Super. 2004)). For that reason, we are neither required nor inclined to revisit this line of precedent, especially when

---

[5] Snider also alleged that the Commonwealth failed to present sufficient evidence that he took a substantial step toward the killing. **See** Snider's Brief at 5. In his brief, however, Snider does not develop an argument for how the Commonwealth failed to prove the *actus reus* element of the offense.

Snider did not raise or develop this issue in the trial court by requesting that the jury be instructed that malice was a material element of attempted murder. Thus, we reject Snider's contention that the Commonwealth failed to prove that he acted with malice.

**III.**

In his second issue, Snider alleges that the Commonwealth failed to prove beyond a reasonable doubt that Snider did not act in perfect self-defense. When a defendant employs deadly force, the elements of a claim of self-defense are that the defendant (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2) was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. *See Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012); 18 Pa.C.S § 505(b)(2) (pertaining to use of deadly force in self-protection). A defendant does not have a burden to prove a claim of self-defense. Once a defendant introduces "some evidence" to justify a finding of self-defense, the issue is properly before the fact-finder and the Commonwealth bears the burden to disprove the defense beyond a reasonable doubt. *Id*. The Commonwealth can satisfy this burden by disproving any of the elements of self-defense. *See Mouzon*, 53 A.3d at 740-41.

Because Snider claims that he did not provoke the fight nor have a duty to retreat, Snider contends that the only question that remained for the jury was whether he believed that deadly force was necessary to protect himself

against death or serious bodily injury. On this question, Snider asserts that the evidence was clear:

> … Crockett made an aggressive return to the bar, "barreling" into the parking lot, after having gone home and intentionally changed his clothing and vehicle to avoid detection. When he returned to the bar, Crockett appeared to be "very angry and irate" and "you could tell on his face he seemed like he was there for some reason." Crockett rapidly approached Mr. Snider with his hand behind his back, where weapons commonly are concealed. A person that Mr. Snider trusted, Ohmer, shouted out a warning to Mr. Snider about Crockett's possible possession of a gun. As Crockett initiated another violent encounter with Mr. Snider, he punched Mr. Snider in his face multiple times, breaking his eye socket. This, in and of itself, amounts to the commission of the crime of aggravated assault in which serious bodily injury *resulted* – all before Crockett suffered a single injury.
>
> No reasonable person in Mr. Snider's position would have believed that he was not in danger of death or *further* serious bodily injury such that he needed to use deadly force to defend himself, or that such a belief would have been manifestly unreasonable for a person in Mr. Snider's position to hold. Given the totality of these circumstances, Mr. Snider's belief that he was in imminent danger of death or *further* serious bodily injury and that it was necessary to defend himself was both *bona fide* and objectively reasonable….

Snider's Brief at 58-60 (footnote and record citations omitted; emphasis in original).

Like his sufficiency argument, Snider's self-defense argument depends on a favorable reading of the trial record. Again, however, we are bound to view the evidence in the light most favorable to the Commonwealth as the verdict winner. This being the case, we find the trial court's discussion of Snider's self-defense argument convincing:

> Here, the jury determined that the Commonwealth did not meet its burden of proof in negating the claim of self-defense.

- 13 -

Even though the testimony appeared to show that [Crockett] was the initial aggressor in the second altercation in the parking lot of the bar, the jury could have reasonably found that [Snider] escalated the altercation by chasing the victim when he attempted to flee and that [Snider] used more force than was necessary to protect himself than necessary by standing over [Crockett] while he was on the ground and inflicting seven serious stab wounds. Either of those findings was sufficient to disprove [Snider's] claim of self-defense. The description of the assault by witnesses and [Crockett], particularly the testimony that [Snider] chased [Crockett] as [Crockett] tried to run away, the use of a weapon (knife), the number of stab wounds (seven), the locations of the stab wounds ([Crockett's] torso and lower back), and the number of serious wounds (lacerated diaphragm and severed nerves) … are sufficient to disprove [Snider's] claim of self-defense. The record is clear that [Crockett] was not actually seen with any type of weapon.

During its case in chief, the Commonwealth introduced into evidence the approximately 42-minute video-recorded interview of [Snider] by the detective investigating this case. During the interview, [Snider] did discuss the altercation, and he did say he was just trying to defend himself and that he blacked out after he was punched. However, he also said that he did not have a knife and that he did not know how [Crockett] got stabbed. The jury obviously made a credibility determination about [Snider's] statement in rending its verdict.

Moreover, [Snider] never specifically indicated that he believed he acted in self-defense. He denied having a deadly weapon, and he disavowed any knowledge as to how the victim would have been stabbed as many times as [he] was. The "theme" of justifiable self-defense is that a defendant says, "yes, I acted and used deadly force, but I felt I had to in order to protect myself from being killed or seriously injured." Therefore, the jury may have determined that [Snider] himself did not provide evidence of justifiable self-defense. Contradictory testimony and questions of credibility are matters for the finder of fact. See Commonwealth v. Hopkins, 747 A.2d 910 (Pa. Super. 2000).

The jury made a credibility decision and determinations regarding disputed facts when it made its determinations that [Snider] did not act with legal justification. That determination was reasonable in light of the facts of record…

- 14 -

Trial Court Opinion, 2/16/22, at 7-8.

As this discussion highlights, the jury was presented with evidence that Snider not only stabbed Crockett multiple times, but also that he chased Crockett as he tried to get away once he realized that Snider had a knife and had stabbed him. Under these circumstances, therefore, we find that the Commonwealth satisfied its burden of disproving Snider's claim of self-defense.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2022