J-E01003-25

2025 PA SUPER 140

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
SAYJOUNA VANSYCKEL : No. 1316 EDA 2023

Appeal from the Order Entered April 26, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0005705-2021


BEFORE: LAZARUS, P.J., BOWES, J., PANELLA, P.J.E., DUBOW, J.,
McLAUGHLIN, J., KING, J., SULLIVAN, J., BECK, J., and LANE, J.

OPINION BY BECK, J.: **FILED JULY 9, 2025**

The Commonwealth appeals from the order entered by the Philadelphia

County Court of Common Pleas ("trial court") denying its motion to refile the

charges of third-degree murder, voluntary manslaughter, possession of an

instrument of crime ("PIC"), tampering with physical evidence, and

obstructing the administration of law against Sayjouna Vansyckel

("Vansyckel"). Because we conclude that the Commonwealth established a

prima facie case for each of the charges, we reverse the order denying the

motion to refile and remand this matter to the trial court for proceedings

consistent with this decision.

**Facts and Procedural History**

This case arises out of the stabbing death of Taylor Dawson ("Dawson"),

Vansyckel's ex-paramour, on March 24, 2021. On March 25, 2021, police

arrested Vansyckel and charged her with the above-referenced crimes in connection with Dawson's killing.

On March 1, 2022, the Philadelphia Municipal Court ("municipal court") held a preliminary hearing, at which the Commonwealth presented the following evidence. On the evening of Dawson's death, at around 5:45 p.m., Officer David Jones responded to a disturbance report at Vansyckel's home on Elbridge Street in Philadelphia, Pennsylvania. While approaching Vansyckel's home, Officer Jones heard a voice from inside the home say that there were two stabbing victims in the house. When Officer Jones entered the home, he saw Dawson lying on the floor. Officer Jones observed that Dawson's shirt was pulled all the way up, there was a stab wound below her left breast, she was cold to the touch and had no pulse. Officer Jones also observed that Vansyckel had blood on her face, nose, and lips, and that Vansyckel's mother had been stabbed.

Paramedics rushed Dawson to Albert Einstein Medical Center where she was pronounced dead at 6:09 p.m. The Philadelphia Medical Examiner's Office found that Dawson had been stabbed five times, four times in the chest and torso area and once on her left arm, and that one of the stab wounds entered Dawson's left chest and penetrated two-and-a-half inches through to her heart. The Medical Examiner concluded that Dawson's cause of death was a stab wound to her torso and her manner of death was homicide. Both parties

stipulated to the findings and conclusions of the Medical Examiner's report. *See* N.T., 3/1/2022, at 6, 16-17.

The same night, police took Vansyckel to the Homicide Unit for an interview. In her statement, Vansyckel stated that she had broken up with Dawson and that Dawson had come to her home to retrieve her belongings. Vansyckel claimed that the two individuals engaged in a verbal altercation at the front door. Vansyckel alleged that she told Dawson to leave and attempted to close the door, but Dawson pushed it open. Vansyckel stated that she then attempted to dial 9-1-1, but Dawson took the phone from her and threw it into her neighbor's yard. Vansyckel alleged that Dawson was able to enter her home while yelling and screaming as Vansyckel's mother tried to prevent her from further entering the residence. Vansyckel claimed that at this time, she grabbed a knife from the kitchen,[1] approached Dawson, and began swinging it to scare Dawson. Vansyckel stated that Dawson then fell to the floor and Vansyckel's mother told her that she had stabbed Dawson. Vansyckel alleged that she tried to stop the bleeding until police arrived, at which time she hid the knife in the bathroom.

_____

[1] In her statement to police, Vansyckel's reason for obtaining the knife changed throughout her interview. First, she told police that she retrieved the knife because Dawson physically attacked her; she subsequently told police that it was because Dawson attacked her mother; and she finally told police that Dawson's verbal threats prompted her to grab the knife. N.T., 4/26/2023, Exhibit C-3A.

At the close of the preliminary hearing, the municipal court dismissed the case "in its entirety for lack of evidence." *Id.* at 65. The Commonwealth moved to refile all charges the same day. On April 26, 2023, the trial court held a hearing on the Commonwealth's motion. At the hearing, the Commonwealth presented the notes of testimony from the preliminary hearing, the Medical Examiner's report, a summary of Vansyckel's signed police statement, and a video and transcript of Vansyckel's statement. At the conclusion of the hearing, the trial court denied the Commonwealth's request.

This timely appeal followed. Both the trial court and the Commonwealth have complied with Pennsylvania Rule of Appellate Procedure 1925. The Commonwealth presents the following question for review:

> Did the [trial] court err in denying the motion to refile all charges against [Vansyckel] where the evidence, properly viewed in the light most favorable to the Commonwealth, established a prima facie case that [Vansyckel] committed each of the charged crimes?

Commonwealth's Brief at 4. A three-judge panel initially affirmed the trial court's decision with this author dissenting. The Commonwealth filed a request for reargument before the Court en banc, which we granted. The case is now ripe for disposition.

**Legal Standards**

The question of whether the Commonwealth established a prima facie case for a charged crime is a question of law for which our standard of review is de novo and our scope of review is plenary. ***Commonwealth v. Perez***,

249 A.3d 1092, 1102 (Pa. 2021). The preliminary hearing is not a trial and serves to protect the accused's right against an unlawful arrest and detention. *Id.* At a preliminary hearing, the Commonwealth bears the burden of establishing a prima facie case "that a crime has been committed and that the accused is probably the one who committed it." *Id.* (emphasis omitted; quotation marks and citation omitted); *see also* Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a prima facie case that (1) an offense has been committed and (2) the defendant has committed it."). "A prima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." *Perez*, 249 A.3d at 1102 (quotation marks, brackets, and citation omitted). "Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Id.*

We afford the trial court "no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, prima facie burden to make out the elements of a charged crime." *Commonwealth v. Wroten*, 257 A.3d 734, 742-43 (Pa. Super. 2021) (quotation marks and citation omitted). Thus, "we are not bound by the legal determinations of the trial court." *Id.* at 743 (quotation marks and

citation omitted). "Furthermore, it is inappropriate for the trial court to make weight or credibility determinations when assessing whether the Commonwealth established a prima facie case." *Id.*

Importantly, at a preliminary hearing, "inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect and the evidence must be read in the light most favorable to the Commonwealth's case." *Perez*, 249 A.3d at 1102 (quotation marks and citation omitted). "The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established." *Id.* (quotation marks and citation omitted). We must apply the "the more-likely-than-not" test "to assess the reasonableness of inferences relied upon in establishing a prima facie case of criminal culpability." *Id.*

### Third-Degree Murder and Voluntary Manslaughter

The Commonwealth first argues that the trial court erred in concluding it did not establish a prima facie case of third-degree murder and voluntary manslaughter. Commonwealth's Brief at 12-16. The Commonwealth asserts that it established a prima facie case of these two crimes because the evidence shows that Vansyckel recklessly waved a knife at Dawson, stabbed Dawson multiple times resulting in her death, and there was no evidence that Dawson was armed or carrying another weapon at the time Vansyckel stabbed her. *Id.*

To establish third-degree murder, "the Commonwealth need only prove that the defendant killed another person with malice aforethought." ***Commonwealth v. Santos***, 876 A.2d 360, 363 (Pa. 2005); ***see also*** 18 Pa.C.S. § 2502(c). Put another way, "[t]hird-degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Thompson***, 106 A.3d 742, 757 (Pa. Super. 2014) (quotation marks and citation omitted). "Malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Santos***, 876 A.2d at 363 (brackets, quotation marks, and citation omitted). As our Supreme Court has explained, "there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice." ***Commonwealth v. Packer***, 168 A.3d 161, 169 (Pa. 2017).

> Where malice is based on a reckless disregard of consequences, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that [her] actions might cause death or serious bodily injury; at the very least, the conduct must be such that one could reasonably anticipate death or that serious bodily injury would likely and logically result.

***Commonwealth v. Holley***, 945 A.2d 241, 247-48 (Pa. Super. 2008).

It is well established that "[m]alice may be inferred from the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v.***

*Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (citation omitted).  Further,

the Pennsylvania Crimes code defines serious bodily injury as "bodily injury

which creates a substantial risk of death or which causes serious, permanent

disfigurement, or protracted loss or impairment of the function of any bodily

member or organ."  18 Pa.C.S. § 2301.

The Pennsylvania Crimes Code defines voluntary manslaughter as

follows:

> **(a) General rule**.--A person who kills an individual without lawful
> justification commits voluntary manslaughter if at the time of the
> killing he is acting under a sudden and intense passion resulting
> from serious provocation by:
>
> > (1) the individual killed; or
>
> > (2) another whom the actor endeavors to kill, but he negligently or
> > accidentally causes the death of the individual killed.
>
> **(b) Unreasonable belief killing justifiable.--**A person who
> intentionally or knowingly kills an individual commits voluntary
> manslaughter if at the time of the killing he believes the
> circumstances to be such that, if they existed, would justify the
> killing under Chapter 5 of this title (relating to general principles
> of justification), but his belief is unreasonable.

*Id.* § 2503(a)-(b).  "The elements necessary to establish unreasonable belief

voluntary manslaughter, which is sometimes loosely referred to as 'imperfect

self-defense[,]' require proof of an unreasonable belief rather than a

reasonable belief that deadly force was required to save the actor's life."

*Ventura*, 975 A.2d at 1143 (brackets, quotation marks, and citation omitted).

The certified record reflects that Dawson went to Vansyckel's home, a

verbal altercation ensued between the two individuals, and then Vansyckel

allegedly told Dawson to leave. N.T., 4/26/2023, Exhibit C-3. According to Vansyckel, Dawson refused to leave, pushed her way back into the home, and took away Vansyckel's phone as she was trying to dial 9-1-1. *Id.* Vansyckel claimed that while her mother attempted to prevent Dawson from further entering the home, Vansyckel retrieved a knife from the kitchen. *Id.* She stated that she then approached Dawson with the knife, began waving it around, and stabbed Dawson. *Id.* The Medical Examiner's report indicates that Vansyckel stabbed Dawson five times, four times in the chest and torso area and once on her left arm. N.T., 4/26/2023, Exhibit C-2. The Medical Examiner's report further reveals that one of stab wounds entered Dawson's left chest and penetrated two-and-a-half inches through her ribs, heart, liver, and diaphragm. *Id.* The parties stipulated that the Medical Examiner would testify to a reasonable degree of medical certainty that Dawson's cause of death was this stab wound to her chest and torso. N.T., 3/1/2022, at 6, 16-17.

Vansyckel claimed that she had known Dawson to carry a knife and she thought Dawson was going to kill her. N.T., 4/26/2023, Exhibit C-3. She admitted, however, that she did not see Dawson with a knife on the night in question and police did not recover a knife from the scene other than Vansyckel's knife. *Id.* The record also reveals that Vansyckel hid the knife once she was aware police had arrived at the scene. *Id.*

Based on the foregoing, we conclude that the Commonwealth presented evidence that, viewed in the light most favorable to the Commonwealth, demonstrated that Vansyckel killed Dawson with malice. *See Ventura*, 975 A.2d at 1144 (holding that a fatal stab wound to the heart gives rise to an inference of malice); *see also Commonwealth v. Gonzalez*, 858 A.2d 1219, 1223 (Pa. Super. 2004) (explaining that "actions that attempt to conceal a crime or destroy evidence are also admissible to prove malice" and "consciousness of guilt"). The Commonwealth also presented evidence that, when viewed in the light most favorable to it, demonstrated that Vansyckel killed Dawson under the mistaken belief that Dawson was in possession of a knife and that consequently, Vansyckel's life was in danger. The Commonwealth therefore established, as a matter of law, a prima facie case for both third-degree murder and voluntary manslaughter. As such, we conclude that the trial court erred in denying the Commonwealth's motion to refile the charges of third-degree murder and voluntary manslaughter.

Although Vansyckel has maintained that she did not intend to kill Dawson, this ignores the well-established law that malice also may be established, inter alia, through "recklessness of consequences." *See Santos*, 876 A.2d at 863; *Holley*, 945 A.2d at 247. Our Supreme Court has held that the factfinder may infer specific intent to kill (required for first-degree murder) and malice (required for both first- and third-degree murder) from the use of a deadly weapon on a vital part of a person's body. *Commonwealth v.*

*Hitcho*, 123 A.3d 731, 746 (Pa. 2015) (citing *Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014)). Our High Court has also stated that malice comprehends a killing even in a situation where "a particular person may not be intended to be injured." *Santos*, 876 A.2d at 363; *see also Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) ("In the context of third-degree murder, the Commonwealth need not establish a specific intent to kill, or even a specific intent to harm the victim.").[2]

_____

[2] My learned colleague concludes, in dissent, that the Commonwealth failed to establish a prima facie case of third-degree murder because "the fact that a victim suffered injuries to a vital body part is not dispositive" and "here, there was no evidence, direct or circumstantial, that would show Vansyckel intended to use a deadly weapon on a vital part of the victim's body[.]" Concurring and Dissenting Opinion ("CDO") at 4. In so arguing, the CDO relies on *Commonwealth v. Holt*, 273 A.3d 514 (Pa. 2022). This passage from *Holt*, however, is of no precedential value as it did not attain a majority of votes and therefore is not binding. *See id.* at 551-52 (Dougherty, J., concurring) ("The specific intent to kill can be inferred simply but absolutely from that fact, namely a deadly weapon was used on a vital part of the decedent's body, and any further analysis regarding the element of intent is unnecessary."). Moreover, the defendant in *Holt* was charged and convicted of first-degree murder. *Id.* at 522-27. The only element at issue—and the basis for the statement relied upon in the CDO—was whether Holt acted with specific intent to kill, which is not an element of third-degree murder. *Id.* at 528. Indeed, Holt conceded that his actions constituted malice and that he was guilty of third-degree murder. *See id.* Thus, *Holt* is inapposite to the instant matter.

The CDO further points to our decision in *Commonwealth v. Austin*, where we held that the Commonwealth failed to present a prima facie case of first- or third-degree murder as the sole evidence presented was that "Austin admitted to swinging the knife," which did not establish that he intended "to direct the knife into the victim's body." CDO at 5-6 (quoting *Commonwealth v. Austin*, 575 A.2d 141, 144-45 (Pa. Super. 1990)). Again, *Austin* is inapposite because in that case, the only evidence the Commonwealth
*(Footnote Continued Next Page)*

To the extent Vansyckel argues that her actions were justified as self-defense, we emphasize that such an argument is inappropriate at this juncture, as it is a defense theory that must be explored and litigated at trial. *See Commonwealth v. Bostian*, 232 A.3d 898, 914 (Pa. Super. 2020) (explaining that defense theories are improper arguments at the preliminary hearing stage as the sole consideration is whether a crime has been committed and that the accused is likely the one who committed it).  Likewise, the trial court could not make weight or credibility determinations at this stage of the proceedings, which would be required to assess whether Vansyckel acted in self-defense.  *See Wroten*, 257 A.3d at 743.  The record reflects that Vansyckel provided several different stories to police in support of her claim of self-defense.  First, she told police that she used the knife because Dawson physically attacked her; then she told police that she retrieved the knife because Dawson attacked her mother; and she finally told police that she

_____

presented was Austin's statement to police, which unequivocally established that the victim attacked and hit him in the head with a pipe multiple times prior to Austin taking his knife out ("Question: How many times did [the victim] hit you? Answer: All together, about three or four times").  *Austin*, 575 A.2d at 150.  In this lone piece of evidence, Austin also stated that he swung the knife only once and stopped because he realized his attacker was "on the defense now."  *Id.*  Here, in contrast, not only did Vansyckel give multiple, conflicting statements to police, the Commonwealth presented additional evidence—the Medical Examiner's Report—which itself is prima facie evidence of recklessness of consequences, if not an intentional act, by Vansyckel.  *See* N.T., 4/26/2023, Exhibit C-2.  In *Austin*, because there was only one, uncontradicted source of evidence, the court did not have to make any credibility determinations in deciding whether Austin's actions were purely defensive in nature.  *See Austin*, 575 A.2d at 153-54.

grabbed the knife because Dawson verbally threatened her. N.T., 4/26/2023, Exhibit C-3A. Additionally, the Medical Examiner's report, to which the parties stipulated, indicated that Dawson sustained five stab wounds, including four to her chest, one of which pierced her heart. *Id.*, Exhibit C-2. Thus, to rule in favor of Vansyckel based on her claim of self-defense would require weighing evidence, crediting certain portions of her story over others, and wholly ignoring the Medical Examiner's report.[3] This violates our standard of review of a trial court's decision at the preliminary hearing stage. *See Wroten*, 257 A.3d at 742-43; *Perez*, 249 A.3d at 1102.

**PIC, Evidence Tampering, and Obstructing the Administration of Law**

---

[3] With respect to the charge of voluntary manslaughter, the CDO states that we "gloss[] over the requirement that Vansyckel must have intentionally or knowingly killed Dawson," that there "is not a shred of evidence Vansyckel intentionally or knowingly killed Dawson," and that "the Commonwealth's evidence shows at most an accidental or unintentional killing." CDO at 6. Respectfully, to reach this conclusion requires engaging in factfinding in favor of Vansyckel, weighing the evidence, and making credibility determinations, none of which this Court can do in any event and the court below was prohibited from doing at this stage of the proceeding. *See Wroten*, 257 A.3d at 743.

While, as stated above, the record certainly supports a prima facie finding that Vansyckel acted recklessly, the Commonwealth also did, in fact, present evidence that demonstrates Vansyckel intentionally killed Dawson— the Medical Examiner's report, which states that Dawson sustained five separate stab wounds, one of which deeply penetrated Dawson's chest and three of her vital organs. *See* N.T., 4/26/2023, Exhibit C-2. Viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, Vansyckel's actions in stabbing Dawson five times, including a deep, penetrating, forceful downward thrust to Dawson's chest that inflicted the fatal wound, supports an inference that Vansyckel acted intentionally.

- 13 -

The Commonwealth's final claim is that the trial court erred in concluding it did not establish a prima facie case of PIC, tampering with physical evidence, and obstructing the administration of law. Commonwealth's Brief at 17-20. The Commonwealth asserts that it established a prima facie case for each of these crimes because the evidence shows that Vansyckel used a knife to stab Dawson, resulting in her death, and then hid the knife in the bathroom when police arrived at the scene. *Id.*

A person commits the crime of PIC if they possess "any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). An "instrument of crime" is "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." *Id.* § 907(d). "The actor's criminal purpose … provides the touchstone of his liability for the PIC offense, and such purpose may be inferred from the circumstances surrounding the possession." *Commonwealth v. Brockington*, 230 A.3d 1209, 1213 (Pa. Super. 2020).

A person commits tampering with physical evidence if, "believing that an official proceeding or investigation is pending or about to be instituted," she "alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]" 18 Pa.C.S. § 4910(1). Similarly, a person obstructs the administration of law if she "intentionally obstructs, impairs or perverts the administration of law or

- 14 -

other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]" *Id.* § 5101.

As established above, the certified record reflects that while Dawson and Vansyckel's mother were shouting at one another, Vansyckel went to the kitchen and retrieved a knife, which she then began swinging in Dawson's vicinity, ultimately stabbing and killing her with it. N.T., 4/26/2023, Exhibit C-3. Vansyckel stabbed Dawson four times in the chest and once in the left arm and one of stab wounds pierced Dawson's heart. *Id.*, Exhibit C-2. The record further reveals that Dawson was unarmed, and based on the differing versions of events Vansyckel offered to police, we cannot say at this stage of the proceedings whether Dawson posed a physical threat to Vansyckel and her mother such that Vansyckel's use of deadly force was justified and thus, lawful. *Id.*, Exhibit C-3; *see Wroten*, 257 A.3d at 742-43; *Perez*, 249 A.3d at 1102. Additionally, in her statement to police, Vansyckel admitted that once police arrived at the house, she took the knife and hid it in her bathroom. N.T., 4/26/2023, Exhibit C-3.

Based on the foregoing, we conclude that the evidence presented, viewed in the light most favorable to the Commonwealth, established that Vansyckel was in possession of a knife that she intended to employ criminally, as she stabbed Dawson multiple times resulting in Dawson's death. *See* 18 Pa.C.S. § 907(a), (d); *see also Brockington*, 230 A.3d at 1213. Vansyckel offers no caselaw to support the proposition that recklessly swinging a kitchen

knife in close proximity to an individual to scare that person, which results in the stabbing death of the individual, constitutes the lawful use of a knife. **See** Vansyckel's Brief at 25-30.

The record further establishes that once police arrived at the scene of the stabbing, Vansyckel hid the knife in the bathroom, which supports the inference that she did so to impede the police's efforts to investigate Dawson's stabbing—all of which Vansyckel admits. **See** 18 Pa.C.S. §§ 4910(1), 5101; N.T., 4/26/2023, Exhibit C-3. Thus, as a matter of law, the Commonwealth presented a prima facie case for PIC, tampering with physical evidence, and obstructing the administration of law. We therefore conclude that the trial court also erred in denying the Commonwealth's motion to refile these charges.

## Conclusion

As the Commonwealth satisfied its burden of proving a prima facie case at this early stage of the proceedings, we reverse the trial court's order denying the Commonwealth's motion to refile the charges of third-degree murder, voluntary manslaughter, PIC tampering with evidence, and obstructing justice. We remand this matter to the trial court for trial on all charges.

Order reversed. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judge Bowes, Judge Dubow, Judge McLaughlin, Judge King, and Judge Sullivan join this Opinion.

P.J.E. Panella files a Concurring and Dissenting Opinion in which P.J. Lazarus and Judge Lane join.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/9/2025