J-E01003-25

2025 PS SUPER 140

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAYJOUNA VANSYCKEL | : | No. 1316 EDA 2023 |

Appeal from the Order Entered April 26, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0005705-2021

BEFORE: LAZARUS, P.J., BOWES, J., PANELLA, P.J.E., DUBOW, J., McLAUGHLIN, J., KING, J., SULLIVAN, J., BECK, J., and LANE, J.

CONCURRING/DISSENTING OPINION BY PANELLA, P.J.E.:

**FILED JULY 9, 2025**

I concur in the Majority's analysis regarding the charges of tampering with or fabricating physical evidence and obstructing administration of law or other governmental function.[1] However, I respectfully dissent from the Majority's analysis regarding the charges of third-degree murder, voluntary manslaughter, and possessing instruments of crime ("PIC"),[2] as I would find the Commonwealth did not establish a prima facie case for those crimes.

The Majority accurately lists the elements required for each charge; therefore, I do not repeat them here. However, while the Majority correctly

---

[1] 18 Pa.C.S.A. §§ 4910 and 5101, respectively.

[2] 18 Pa.C.S.A. §§ 2502(c), 2503, and 907(a), respectively.

notes that the court is not to make credibility determinations at this stage, *see* Majority Opin. at 6 (quoting **Commonwealth v. Wroten**, 257 A.3d 734, 743 (Pa. Super. 2021)), the Commonwealth must still present sufficient evidence to establish a prima facie case of each element, including the mens rea of each charged crime. **See Commonwealth v. Frye**, 319 A.3d 602, 606 (Pa. Super. 2024) ("[T]he prima facie standard requires evidence of the existence of each and every element of the crime charged.") (italics and citation omitted). Because the original issuing authority and the trial court correctly concluded that the Commonwealth failed to establish a prima facie case on these charges, this deficiency is fatal to the Commonwealth's case.

My dispute with the Majority's analysis of a prima facie case of third-degree murder is on how the element of malice is defined. While it is true that malice may be inferred from the intentional use of a deadly weapon on a vital part of the body, the majority ignores the fact that there was no evidence Vansyckel *intentionally* used the knife on a vital part of Dawson's body. **See Commonwealth v. Hill**, 629 A.2d 949, 951 (Pa. Super. 1993) ("Malice may be inferred from the intentional use of a deadly weapon on a vital part of the body.") (citation omitted).

Our Supreme Court evaluated the concept of malice inferred from the use of a deadly weapon on a vital part of the body in **Commonwealth v. Holt**, 273 A.3d 514 (Pa. 2022). There, our Supreme Court was reviewing the

- 2 -

sufficiency of the evidence after a jury found Holt guilty of first-degree murder

and related charges. I find our Supreme Court's explanation informative:

> To the extent that the Commonwealth asks the Court to affirm based solely on the fact that Officer Holt was struck in vital parts of his body, we decline to do so. There is no doubt that intentionally striking a vital part of the body with a deadly weapon is, by itself, sufficient for a fact-finder to infer the specific intent to kill. …
>
> We agree that the bullets struck Officer Shaw in vital body parts. … However, this is not a straightforward case like [**Commonwealth v.**] **Rodgers**, [456 A.2d 1352, 1353 (Pa. 1983),] where the "nature of the killing" leaves no room to question whether the actor intentionally aimed the weapon at the victim. The validity of the inference that striking a vital body part with a bullet is sufficient evidence of intent to kill rests on the **intentional use** of the weapon to achieve that result. For example, a person firing a gun blindly through the woods for amusement may strike an unseen hunter in the heart. A rational fact-finder could not conclude that the fact a bullet struck a vital part of the body established a specific intent to kill. In **Commonwealth v. Drum**, 58 Pa. 9 (Pa. 1868), we stated: "He who uses a deadly weapon upon another at some vital part, with manifest intention to use it upon him, must in the absence of qualifying facts be presumed to know that his blow is likely to kill, and must be presumed to intend death." **Id.** at 9.
>
> Thus, the fact that a victim suffered injuries to a vital body part is not dispositive for a sufficiency analysis. There must also be other evidence demonstrating that the shooter manifestly intended to use the weapon upon the victim. Affirming the verdict based solely on the fact that a vital body part was struck would be in dereliction of **Jackson**[ **v. Virginia**, 443 U.S. 307 (1979)] and the Due Process Clause, as we are required to review all the evidence. **See Jackson**, 443 U.S. at 319, 99 S.Ct. 2781 ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution."). Holt correctly observes that there is no direct testimony concerning how he deployed his weapon. We therefore decline to uphold the verdict

based solely on the fact that at least one bullet struck a vital body part.

*Holt*, 273 A.3d at 529 (emphasis added; some citations omitted).

I readily acknowledge that the case currently before us is at a much earlier procedural posture than the *Holt* case. Certainly, the level of proof at these two stages could not be more different: a prima facie standard versus beyond a reasonable doubt. However, I find the guidance supplied by our Supreme Court as to the necessary elements to be equally true for a prima facie case: "the fact that a victim suffered injuries to a vital body part is not dispositive[.]" Here, there was no evidence, direct or circumstantial, that would show Vansyckel intended to use a deadly weapon on a vital part of the victim's body; rather, the uncontroverted evidence was that the knife was only used as a defensive mechanism when the victim unlawfully entered Vansyckel's home and began fighting with Vansyckel's mother. Vansyckel admitted to waving a knife around to scare off the victim, nothing else. She never once admitted to intentionally using the knife to stab the victim on any part of her body.

We addressed a substantially similar case in *Commonwealth v. Austin*, 575 A.2d 141 (Pa. Super. 1990). There, the trial court granted Austin's motion to quash charges of murder, voluntary manslaughter, and PIC, specifically a knife. *Austin*, 575 A.2d at 142. The evidence presented by the Commonwealth included Austin's statement to police. *Id.* at 142-43. Austin told police:

- 4 -

[The victim] had something in his hand, but I could not see what it was. I went past him toward Sandy, and then [the victim] hit me in the head with a pipe, or stick or something.

I stumbled and turned around. He came at me, and as he was swinging whatever he had, as he was swinging what it was there he had, I put up my left hand and he hit me. As he was doing this, I pulled out my knife. I had it in my hand, and I swung the knife at him swinging (indicating an upward motion from the waist). And if I thought about it twice, I was swinging again, but I changed my mind, because he was on the defense now.

*Id.* at 143. Austin then left the area, but before he did, he saw the victim

laying on the ground. We held that:

The evidence presented at the preliminary hearing does not support the Commonwealth's position. Austin admitted he intentionally pulled out his knife. Austin then stated that, "I swung the knife at him swinging (indicating an upward motion from the waist). And if I thought about it twice, I was swinging again…." The Commonwealth construes this evidence to indicate that Austin's focus was on plunging the knife into the victim, from which it can be inferred that Austin intended to kill the victim. The evidence, however, supports the position that Austin's focus was on swinging the knife and not on stabbing the victim.

The Commonwealth's argument centers on the use of the knife itself to cause the death; however, the physical act of using the knife on a vital area is not the proper focus. The proper focus for determining the mental component of the crime is how appellant intended to use the knife or what caused the knife to come into contact with a vital area of a human body. A specific intent to kill and malice are properly implied when a deadly weapon is *directed* to a vital part of the body. In other words, what did Austin intend to do with the knife: was it his intention to put the knife into the victim or was it his intention to do something else.

In the case before the bar, the preliminary hearing judge had to determine from the evidence what Austin's intentions were up to and including the moment of the knife's contact with victim. There is no evidence that the knife was directed at a vital part of the victim's body. Austin admitted to swinging the knife and the Commonwealth presented no other evidence concerning this

issue. The judge found that Austin did not intend to direct the knife into victim's body. We agree.

*Id.* at 144-45 (emphasis in original). This Court then held that the evidence did not support a prima facie case of either first- or third-degree murder and affirmed the order quashing the charges. *See id.* at 145.

The same applies here: the evidence presented by the Commonwealth does not include any "evidence that the knife was directed at a vital part of the victim's body. [Vansyckel] admitted to swinging the knife and the Commonwealth presented no other evidence concerning this issue." *Id.* I would therefore find the Commonwealth did not present a prima facie case of malice required for third-degree murder.

The same issue plagues the Commonwealth's charge of voluntary manslaughter. There was no evidence of the required mens rea. "Voluntary manslaughter contemplates an intentional killing wherein the defendant harbors a specific intent to kill or cause serious injury." *Commonwealth v. Patton*, 936 A.2d 1170, 1178 (Pa. Super. 2007) (citations omitted).

The Commonwealth did not present any evidence Vansyckel harbored a specific intent to kill or cause serious bodily injury to Dawson. The Majority glosses over the requirement that Vansyckel must have "intentionally or knowingly kill[ed]" Dawson. 18 Pa.C.S.A. § 2503(b) (defining voluntary manslaughter). There is not a shred of evidence Vansyckel intentionally or knowingly killed Dawson. The Commonwealth's evidence shows at most an

- 6 -

accidental or unintentional killing. That does not support a charge of voluntary manslaughter.

Finally, I disagree with the Majority's analysis concerning the charge of PIC. The Majority correctly defines PIC and agrees "[t]he actor's criminal purpose … provides the touchstone of his liability for the PIC offense, and such purpose may be inferred from the circumstances surrounding the possession." Majority Opin., at 12-13 (quoting **Commonwealth v. Brockington**, 230 A.3d 1209, 1213 (Pa. Super. 2020)). I diverge from the Majority's analysis as they find that Vansyckel intended to employ the knife criminally because "she stabbed Dawson multiple times resulting in Dawson's death." Majority Opin., at 14. Simply because Dawson was stabbed multiple times does not establish Vansyckel's intent to employ the knife criminally. The circumstances surrounding Vansyckel's possession of the knife show Vansyckel only obtained the knife due to Dawson's threatening behavior as Dawson unlawfully entered Vansyckel's home. Vansyckel steadfastly maintained she never intended to hurt anyone and only grabbed the knife to scare Dawson. **See** Summary of Interview, 3/25/21 (single page); Recorded Interview, 3/24/21-3/25/21, at 22:58:00-22:58:04, 23:30:00-23:30:07, 23:42:33-23:42:50, 23:48:40-23:48:46, 23:55:43-23:56:13, 23:59:04-23:59:12, 00:03:27-00:04:11. The Commonwealth did not present any other testimony or evidence to establish a criminal intent behind Vansyckel's use of the knife. I would therefore find that the Commonwealth has not established Vansyckel possessed the knife

under circumstances not manifestly appropriate for lawful uses as she merely used the knife to scare Dawson after Dawson unlawfully entered her home.

Because I would find the Commonwealth only established a prima facie case of tampering with or fabricating physical evidence and obstructing administration of law or other governmental function, I respectfully dissent.

P.J. Lazarus and Judge Lane join this Concurring and Dissenting Opinion.